STATE *v.* HALL.

STATE v. WILLIAM HALL AND JOHN DOCKERY.

*Indictment for Murder—Jurisdiction—Crime Committed in Another State.*

1. One State or sovereignty cannot enforce the penal or criminal laws of another or punish crimes or offences committed in and against another State or sovereignty.

2. Where the fatal stroke and death occur in the same State, the offence of murder at common law is there complete, and the Courts of that State can alone try the offender for that specific common law crime.

3. Where one puts in force an agency for the commission of crime he, in legal contemplation, accompanies the same to the point where it becomes effectual—the criminal act is the impinging of the weapon on the party injured, and that is where the impingement happens; therefore, where one, standing in North Carolina, by the firing a bullet, killed another standing in Tennessee, the assault or stroke was in the latter State and at common law the murder was committed in that State and its Courts alone have jurisdiction of the offence.

4. Nor, in such case, is jurisdiction conferred upon the Courts in this State by the statute (section 1197 of *The Code*) which provides that " in all cases of felonious homicide, where the assault shall have been made within this State, and the person assaulted shall die without the limits thereof, the offender shall be indicted and punished for the crime in the county where the assault was made, in the manner, to all intents and purposes as if the person assaulted had died within the limits of this State "; the term "assault," as used in such statute meaning, not a mere *attempt*, but an injury inflicted in this State and resulting in death in an another State.

5. Nor, in such case, will the fact that both the defendant and deceased were citizens of North Carolina confer jurisdiction on the Courts of this State, for the personal jurisdiction generally claimed by nations over their subjects who have committed offences abroad or on the high seas does not exist as between the States of the Union under their peculiar relation to each other.

INDICTMENT for murder, tried at Spring Term, 1893, of CHEROKEE Superior Court, before *Graves, J.*, and a jury.

The defendants (Hall as principal and Dockery as accessory before the fact) were charged with the killing of Andrew Bryson on the 11th July, 1892, in Cherokee county. The testimony tended to show that when the shooting occurred, by which deceased was killed, the defendants were in North Carolina and the deceased in Tennessee.

The defendants asked for the following instructions (among others):

" 1. That it devolves upon the State to satisfy the jury beyond a reasonable doubt that the killing took place in the State of North Carolina; and if the State has failed to satisfy the jury beyond a reasonable doubt that the deceased received the wound from which he died whilst he was in the State of North Carolina, the defendants are not guilty.

" 2. That if the prisoners were in North Carolina and the deceased was in Tennessee, and the prisoners, ·or either of them, shot the deceased whilst he, the deceased, was in the State of Tennessee, and the deceased died from the effects of the wounds so received, the defendants are not guilty."

The instructions were refused, and after a verdict of guilty the defendants appealed from the judgment rendered thereon.

The Attorney General, for the State.
Mr. G. S Ferguson, for defendants (appellants).

Shepherd, C. J.: There was testimony tending to show that the deceased was wounded and died in the State of Tennessee, and that the fatal wounds were inflicted by the prisoners by shooting at the deceased while they were standing within the boundaries of the State of North Carolina. The prisoners have been convicted of murder, and the question presented is whether they committed that offence within the jurisdiction of this State.

It is a general principle of universal acceptation that one State or sovereignty cannot enforce the penal or criminal laws of another, or punish crimes or offences committed in and against another State or sovereignty. Rorer's Interstate Law, 308; Story's Conflict Laws, 620–623; The Antelope, 10 Wheaton, 66–123; State v. Knight, Taylor's Rep.,

65; *State v. Brown*, 1 Haywood, 100; *State* v. *Cutshall*, 110 N. C., 538.

There may, by reason of "a statute or the nature of a particular case," be apparent exceptions to the rule, as if "one personally out of the country puts in motion a force which takes effect in it, he is answerable where the evil is done, though his presence was elsewhere. So where a man, standing beyond the outer line of a territory, by discharging a ball over the line kills another within it; or himself, being abroad, circulates libel here, or in like manner obtains here goods by false pretenses; or does any other crime in our own locality against our laws, he is punishable, though absent, the same as if he were present." 1 Bishop Cr. Law, 109–110; *State* v. *Cutshall, supra.*

These cases, however, are but instances of crimes which are considered by the law to have been committed within our territory, and in nowise conflict with the general principle to which we have referred. Starting, then, with this fundamental principle and avoiding a general discussion of the subject of extra-territorial crime, we will at once proceed to an examination of the interesting question which has been submitted for our determination.

It seems to have been a matter of doubt in ancient times whether, if a blow were struck in one county and death ensued in another, the offender could be prosecuted in either, though according to Lord Hale (Pleas of the Crown, 426) "the more common opinion was that he might be indicted where the stroke was given." This difficulty, as stated by Mr. Starkie, was sought to be avoided by the legal device "of carrying the dead body back into the county where the blow was struck, and the jury might there," he adds, "inquire both of the stroke and death." 1 Starkie Cr. Pl., 2 Ed., 304; 1 Hawks, Pl. of Crown, ch. 13; 1 East, 361. But to remove all doubt in respect to a matter of

such grave importance, it was enacted by the statute 2 and 3 Edward VI. that the murderer might be tried in the county where the death occurred. This statute, either as a part of the common law or by re-enactment, is in force in many of the States of the Union, and as applicable to counties within the same State its validity has never been questioned (see Acts 1891, ch. 68, and also The Code of Tennessee, §5801), but where its provisions have been extended so as to affect the jurisdiction of the different States its constitutionality has been vigorously assailed. Such legislation, however, has been very generally, if not indeed uniformly, sustained. *Simpson* v. *State*, 4 Hump. (Tenn.), 461; *Green* v. *State*, 66 Ala., 40; *Commonwealth* v. *Macloon*, 101 Mass., 1; *Tyler* v. *People*, 8 Mich., 326; *Hemmaker* v. *State*, 12 Mo., 453; *People* v. *Burke*, 11 Wend., 129; *Hunter* v. *State*, 40 N. J., 495.

Statutes of this character "are founded upon the general power of the Legislature, except so far as restrained by the Constitution of the Commonwealth and the United States, to declare any willful or negligent act, which causes an injury to person or property within its territory, to be a crime." Kerr on Homicide, 47. See, also, remarks of Justice BRADLEY in the *habeas corpus* proceedings of Guiteau, reported in the notes to the case of *United States* v. *Guiteau*, 47 Am. Rep., 247; 1 Mackey, 498. In many of the States there are also statutes substantially providing that where the death occurs outside of one State, by reason of a stroke given in another, the latter State may have jurisdiction. See our act, *The Code*, §1197. The validity of these statutes seems to be undisputed, and, indeed, it has been held in many jurisdictions that such legislation is but in affirmance of the common law. This view is taken by the Supreme Court of the District of Columbia in Guiteau's case, *supra*, in which the authorities are collected and their principle

58

stated with much force by Justice James. It is manifest that statutes of this nature are only applicable to cases where the stroke and the death occur in different jurisdictions, and it is equally clear that where the stroke and the death occur in the same State the offence of murder at common law is there complete, and the Courts of that State can alone try the offender for that specific common law crime.

The turning point, therefore, in this case is whether the stroke was, in legal contemplation, given in Tennessee, the alleged place of death; and upon this question the authorities all seem to point in one direction.

In the early case of *Rex* v. *Coombs*, 1 Leach Crown Cases, 388, it was held that "if a loaded pistol be fired from the land at a distance of one hundred yards from the sea, and a man is maliciously killed in the water one hundred yards from the shore, the offender shall be tried by the Admiralty Jurisdiction; for the offence is committed where the death happened and not at the place whence the cause of the death proceeds." See also, 1 East, 367, and 1 Chitty Cr. Law, 154.

In the case of *United States* v. *Davis*, 2 Sumner, 482, a gun was fired from an American ship lying in the harbor of Raiatea, one of the Society Isles and a foreign government, by which a person on board a schooner, belonging to the natives and lying in the same harbor, was killed— Mr. Justice Story, in the course of his opinion, said: "What we found ourselves upon in this case is that the offence, if any, was committed on board of a foreign schooner belonging to inhabitants of the Society Islands, and of course under the territorial government of the Society Islands, with which kingdom we have trade and friendly intercourse, and which our Government may be presumed (since we have a Consul there) to recognize as

entitled to the rights and sovereignty of an independent nation, and of course entitled to try offences committed within its territorial jurisdiction. I say the offence. was committed on board of the schooner; for, although the gun was fired from the ship *Rose*, the shot took effect and the death happened on board of the schooner, and the act was, in contemplation of law, done where the shot took effect. * * * We lay no stress on the fact that the deceased was a foreigner. Our judgment would be the same if he had been an American citizen."

In *Simpson* v. *State*, 17 S. E. Rep., 984, it was held by the Supreme Court of Georgia that one who, in the State of South Carolina, aims and fires a pistol at another who at the time is in the State of Georgia, is guilty of the offence of "shooting at another" although the ball did not take effect, but struck the water in the latter State. The Court said: "Of course the presence of the accused within this State is essential to make his act one which is done in this State, but the presence need not be actual; it may be constructive. The well-established theory of the law is that where one puts in force an agency for the commission of crime, he in legal contemplation accompanies the same to the point where it becomes effectual. * * * So, if a man in the State of South Carolina criminally fires a ball into the State of Georgia the law regards him as accompanying the ball and as being represented by it up to the point where it strikes. If an unlawful shooting occurred while both the parties were in this State the mere fact of missing would not render the person who shot any the less guilty; consequently, if one shooting from another State goes, in a legal sense, where his bullet goes, the fact of his missing the object at which he aims cannot alter the legal principle."

The Court approved of the language of CAMPBELL, J., in

*Tyler* v. *People*, 8 Mich., 320, that "a wounding must of course be done where there is a person wounded, and the criminal act is the force against his person. That is the immediate act of the assailant, whether he strikes with a sword or shoots with a gun, and he may very reasonably be held present where his forcible act becomes directly operative."

In speaking of crime committed by one out of the State, through an innocent agent, Judge RORER says: "In such case the innocent person in the State is the means used to perpetrate the crime therein, just as if a person who shoots out of a State across the line into another State and therein intentionally kills another person is in such case guilty of committing the criminal act within the State without himself being at the time therein." Interstate Law, 326.

In *Commonwealth* v. *Macloon*, *supra*, Justice GRAY says that if one's "unlawful act is the efficient cause of the mortal injury, his personal presence at the time of its beginning, its continuance, or its result, is not essential. He may be held guilty of homicide by shooting, even if he stands afar off, out of sight, or in another jurisdiction."

In *State* v. *Carter*, 3 Dutcher, 499, the Supreme Court of New Jersey, in discussing a kindred question, said: "This is not the case where a man stands on the New York side of the line, and shooting across the border kills one in New Jersey. When that is so the blow is in fact struck in New Jersey. It is the defendant's act in this State. The passage of the ball, after it crosses the boundary, and its actual striking, is the continuous act of the defendant. In all cases the criminal act is the impinging of the weapon, whatever it may be, on the person of the party injured, and that must necessarily be where the impingement happens. And whether the sword, the ball, or any other missile passes over a boundary in the act of striking is a matter of no

consequence. The act is where it strikes, as much where the party who strikes stands out of the State as where he stands in it." 

In *State* v. *Chapin*, 17 Ark., 560, the Court said: "For example, if a man standing beyond our boundary line, in Texas, were, by firing a gun or propelling any other implement of death, to kill a person in Arkansas, he would be guilty of murder here, and answerable to our laws, because the crime is regarded as being committed where the shot or other implement propelled takes effect." See also, *People* v. *Adams*, 3 Denio, 207.

In *Stillman* v. *Manufacturing Co.*, 3 Woodb. & M. (U. S.), 538, WOODBURY, J., said: "I can conceive of crimes, likewise, like civil injuries, which may be prosecuted in two States, though sometimes in different forms as here. * * * So, if one fires a gun in one State, which kills an individual in another State, there may be the offence of using a deadly weapon in the first State (that is, we suppose, by statute) and committing murder by killing in the second State."

In speaking of the validity of acts similar to that of Edward VI., *supra*, Mr. Black, in an article in the *Central Law Journal* (Vol. XXXVIII, p. 318), remarks: "There is less difficulty in cases where the means of death employed, though set in motion in one jurisdiction, reach and operate upon their object in another territory. For, of course, the act can amount to nothing more than an attempt, until the fatal agency comes in contact with the body of the victim." See, also, upon this subject *American Law Review*, Vol. XX, p. 918.

In view of the foregoing authorities it cannot be doubted that the place of the assault or stroke in the present case was in Tennessee, and it is also clear that the offence of murder at common law was committed within the jurisdiction of that State. If this be so it must follow that unless we have some statute expressly conferring jurisdiction upon

the Courts of this State, or making the act of shooting under the circumstances a substantive murder, the offence with which the prisoners are charged can only be tried by the tribunals of Tennessee.

It is true that in Wharton's Criminal Law, 288, it is said in a general way that "a concurrent jurisdiction exists in the place of starting the offence," but by a reference to the cases cited in support of the proposition it will be readily seen that they have no application to the question under consideration. These and like authorities are where libels are *uttered* in one State to take effect in another (*U. S.* v. *Worrall*, 2 Dall., 383), or where, either by common law or by statute, the place of the stroke has concurrent jurisdiction (*Green* v. *State, supra*), or where an accessory before the fact in one State to a felony committed in another was held to be indictable in the State where he became accessory (*State* v. *Chapin, supra*), or in certain cases of false pretenses, or in conspiracies where an overt act is committed at the place of the trial, or where by statute a particular "section" of an offence committed in one jurisdiction is there made indictable; as, for instance, the act of shooting or unlawfully using a deadly weapon within the State, as in the present case. In some instances there may be concurrent jurisdiction of the whole offence, and in others there may exist the jurisdiction of an attempt in one State and of the consummated offence in another. In a note to the preceding section the author thus explains: "The place of such residence (that is, where the offence is started) has jurisdiction over the attempt or conspiracy as the case may be. The place of the consummation has jurisdiction of the offence consummated on its soil." In respect to this very matter the learned author has made his meaning entirely clear in his article on the conflict of laws. 1 Criminal Law Magazine, 695. In putting the case of A in New York

STATE *v.* HALL.

shooting B in Connecticut, he says that the place of the consummation of the crime should be regarded as its locality. "Until such consummation a crime, so far as jurisdiction is concerned, is simply an attempt and only punishable as such. It may be indictable for A merely to discharge a gun. It may be said, 'This is a dangerous act, punishable as such'; or it may be said, 'From all the circumstances of the case we infer that you are attempting B's life, and you are to be indicted for this attempt.' But it is not until we see before us a man wounded by such a shot that the crime in its completeness exhibits itself."

There being, then, no concurrent jurisdiction at common law, we will now consider whether it has been conferred by statute; for it is well settled that "whenever a homicide is committed partly in and partly out of the jurisdiction where the charge is made, the power to punish it depends upon the question whether so much of the act as operates in the county or State in which the offender is indicted and tried has been declared to be punishable by the law of that jurisdiction." Kerr on Homicide, 226; *Commonwealth* v. *Macloon, supra.* It is not very seriously insisted on the part of the State that our statute (*The Code,* §1197) applies to this case, but inasmuch as it was referred to on the argument it is proper that we should briefly examine into its provisions. It provides:

"In all cases of felonious homicide, when the assault shall have been made within this State and the person assaulted shall die without the limits thereof, the offender shall be indicted and punished for the crime in the county where the assault was made, in the same manner, to all intents and purposes as if the person assaulted had died within the limits of this State."

This statute has received a judicial construction by this Court in *State* v. *Dunkley,* 3 Ired., 116, and it was held that

it did not create any new offence, but merely removed a difficulty which existed as to the place of the trial. In view of the authorities cited it can hardly be contended that the assault in the present case was committed in this State, and especially is this so when the assault mentioned in the statute evidently means not a mere attempt, but such an injury inflicted in this State which results in death in another State. This would seem manifest from the history of the legislation as well as the language of the act, which plainly contemplates that every part of the offence, except the death, must have occurred in this State. It was a subject of doubt, as we have seen, whether the accused could be tried in the place of the stroke, the death having occurred without the jurisdiction, and it was to remove this doubt alone that this and similar legislation was resorted to. It was, of course, never questioned that the place where both the stroke and the death occurred was the place where the crime was committed. We are relieved, however, from all doubt, if any existed, upon this point by the opinion of Chief Justice RUFFIN in Dunkley's case, *supra.* He says that the act "does not profess to define 'felonious homicide,' or to constitute the crime by any particular acts, but merely says that, in certain cases of felonious homicide, the offender may be indicted and of course tried and punished in the county where the *stroke* was given—meaning, though it does not (like the statute 2 and 3, Edward VI.) expressly say so, 'in the same manner as if the death had happened in the same county *where the stroke was given.*'" As it is plain that in contemplation of law the stroke was given in Tennessee, we are of the opinion that there was error in refusing to give the instructions prayed for by the prisoners.

The fact that the prisoners and the deceased were citizens of the State of North Carolina cannot affect the conclusion

we have reached. If, as we have seen, the offence was committed in Tennessee, the personal jurisdiction generally claimed by nations over their subjects who have committed offences abroad or on the high seas cannot be asserted by this State. Such jurisdiction does not exist as between the States of the Union under their peculiar relation to each other (Rorer's Interstate Law, 308), and even if it could be rightfully claimed it could not in a case like the present be enforced in the absence of a statute providing that the offence should be tried in North Carolina. Even in England, where it seems the broadest claim to such jurisdiction is asserted, a statute (33 Hen. VIII.) appears to have been necessary in order that the Courts of that country could try a murder committed in Lisbon by one British subject upon another. *Rex* v. *Sawyer*, Russell & Ryan Cr. Cases, 294, cited and commented upon in Dunkley's case, *supra*. In *People* v. *Merrill*, 2 Parker's Cr. Cases, 600, it is said that by the common law offences were local and the jurisdiction in such cases depends upon statutory provisions. See also, Wheaton International Law, 115; 1 Wharton Cr. L., 271; 1 Bishop Cr. Law, 121. Granting, however, that in some instances the jurisdiction may exist without statute, it is not exercised in all cases. Dr. Wharton says: "It has already been stated that as to crimes committed by subjects in foreign civilized States, with the single exception in England of homicides, the Anglo-American practice is to take cognizance only of offences directed against the sovereignty of the prosecuting State; perjury before Consuls and forgery of Government documents being included in this head." To the same effect is 3 Am. and Eng. Enc., 539, in which it is said: "As to offences committed in foreign civilized lands the country of arrest has jurisdiction only of offences distinctively against its sovereignty." See, also, Dr. Wharton's article upon the subject in 1 Criminal Law Magazine,

715. As between the States the question is so clear to us that we forbear a general discussion of the subject. We may further remark that, while it is true that the criminal laws of a State can have no extra-territorial force, we are of the opinion that it is competent for the Legislature to determine what acts within the limits of the State shall be deemed criminal, and to provide for their punishment. Certainly, there could be no complaint where all the parties concerned in the homicide are citizens of North Carolina. It may also be observed that in addition to its common law jurisdiction the State of Tennessee has provided by statute for the trial of an offender under the circumstances of this case.

For the reasons given we are constrained to say that the prisoners are entitled to a                                        New Trial.