[Crim. No. 1134.  Second Appellate District, Division One.—February
4, 1925.]

## THE PEOPLE, Respondent, v. JOHN E. HULING, Appellant.

[1] CRIMINAL LAW—CONSPIRACY—AGREEMENT.—An agreement, either
express or implied, must be the foundation for the existence of
a criminal conspiracy.

[2] ID.—OBTAINING MONEY AND PROPERTY UNDER FALSE PRETENSES—
ACCESSORY—JURISDICTION.—Jurisdiction as to an accessory to
the crime of obtaining money and property by false pretenses
is in the county where the acts making him an accessory are
committed, notwithstanding that the principal offense is com-
mitted in another county.

(1) 12 *C. J.*, p. 543, n. 20.   (2) 16 *C. J.*, p. 201, n. 24.

APPEAL from a judgment of the Superior Court of
San Bernardino County and from an order denying a new
trial.  Jesse Olney, Judge.  Reversed.

The facts are stated in the opinion of the court.

Wm. T. Kendrick, Jr., for Appellant.

U. S. Webb, Attorney-General, and Erwin W. Widney,
Deputy Attorney-General, for Respondent.

1. What constitutes and evidence in prosecutions for crime of
conspiracy, note, 3 **Am. St. Rep.** 474.  See, also, 5 **R. C. L.** 1065; 5
**Cal. Jur.** 497.

2. Jurisdiction of prosecution of accessory where principal crime
is committed in another state or county, note, 10 **Ann. Cas.** 878.
See, also, 1 **R. C. L.** 150.

HOUSER, J.—In an indictment consisting of five counts defendant and one F. E. Alford were jointly charged with the crime of obtaining money and property by false representations and pretenses. An information containing three counts also charged defendant with the commission of certain related offenses. A demurrer to the information was sustained as to the first count thereof. The third count of the information accused defendant Huling of the crime of conspiring with defendant Alford to defraud the city of Ontario of the sum of two thousand eight hundred dollars; and in the second count of the information, defendants Huling and Alford were charged with the offense of obtaining by false representations and pretenses the same money and property described in the charge of conspiracy mentioned in the third count, thereby defrauding the city of Ontario of the said sum of two thousand eight hundred dollars.

For the purposes of the trial the several charges contained in the indictment and the remaining charges in the information were consolidated. The jury returned the following verdict: "We, the jury in the above entitled action, find the defendant, John E. Huling, guilty of the crime of obtaining property and money by false representations and pretenses, a felony, as charged in Count 2 of the information, and not guilty of the crime of conspiracy to commit a felony, as charged in Count 3 of the information, and not guilty of each and all of the offenses charged in the indictment."

Defendant appeals from the judgment and from an order denying his motion for a new trial.

Count two of the information charged in substance that said defendants presented a false claim in the name of E. S. O'Neal to the city of Ontario and thereby procured a warrant for the payment to said O'Neal of said claim, and that said warrant was subsequently paid. The evidence showed, among other things, that defendant Alford was the city manager of the city of Ontario, and that it was he who actually made the false representations in order to procure the issuance of the warrant. After obtaining the warrant Alford sent it to Huling, who resided in the city of Los Angeles. Huling then induced E. S. O'Neal, who was his

mother-in law, to indorse the warrant, and thereafter Huling exchanged the warrant so indorsed for the private check of Fred Weddington, who was his brother-in law, and which check defendant cashed at a bank and, according to defendant's testimony, sent the greater part of the money so received to defendant Alford, retaining a small part thereof as a "loan" from defendant Alford. The warrant was thereafter paid.

Appellant's brief contains many specifications of alleged prejudical error which he urges as reasons for a reversal of the judgment. We are convinced that but two of them require consideration by this court. They are (1) that the verdict is contradictory, and (2) that the court was without jurisdiction as to defendant Huling.

Directing attention to the verdict as to the counts in the information, it will be noted that the verdict finds defendant Huling guilty of obtaining property and money by false representations and pretenses, as charged in count two, and not guilty of the crime of conspiring to commit the same offense as charged in count three of the information.

[1] An agreement, either express or implied, must be the foundation for the existence of a criminal conspiracy. The evidence shows that the only connection that defendant Huling had with the matter was in substance as hereinbefore set forth. If there was no agreement or understanding of any kind between defendants that in effect they would commit the offense, it might follow that defendant Huling's acts were innocent of any criminal intent. However, as distinguished from a "conspirator," if defendant Huling "aided and abetted" in the commission of the offense, he might still be criminally liable and the verdict be permitted to stand. In volume 5 of California Jurisprudence, at page 496, it is said: "A 'conspirator' is one who is a participant in a conspiracy, . . . And a conspirator is not necessarily an aider and abetter, . . . "

And in *People* v. *Bond,* 13 Cal. App. 175, 187 [110 Pac. 150, 156], the court said: " 'Conspiracy' implies an agreement to commit the crime, while to 'aid and abet' requires actual participation in the act constituting the offense. It is therefore manifest that one may 'aid and abet' without having previously entered into a conspiracy to commit the

crime." (See, also, *Jones* v. *State,* 174 Ala. 53 [57 South. 31].)

By the provisions of both section 31 and section 971 of the Penal Code, any person concerned in the commission of a felony who "aids and abets" therein is a principal. It would therefore follow that, although the verdict by the jury exonerates defendant Huling from having "conspired" with defendant Alford to commit the offense with which they were jointly charged, the jury may have concluded that, without any agreement or understanding with defendant Alford that a crime should be committed, in view of the fact that a distinction apparently exists between "conspiring" and "aiding and abetting," defendant Huling, while innocent of the crime of criminal conspiracy as charged in the third count of the information, because of his having "aided and abetted" defendant Alford in the perpetration of the offense, was guilty of the crime charged in the third count, and consequently that, instead of Huling being a co-conspirator with Alford, he was an "accessory" with him. In the cases of *People* v. *Outeveras,* 48 Cal. 19, and *People* v. *Rozelle,* 78 Cal. 84 [20 Pac. 36], an accessory is substantially defined as one who stands by and aids and abets and assists, or who counsels, advises, or encourages in the perpetration of a crime.

By section 971 of the Penal Code the distinction between an accessory before the fact and a principal is abrogated, and it is therein provided in effect that accessories shall be "prosecuted, tried and punished as principals." [2] However, with reference to the *place* of trial of an accessory, section 791 of the Penal Code provides that: "In the case of an accessory in the commission of a public offense, the jurisdiction is in the county where the offense of the accessory was committed, notwithstanding the principal offense was committed in another county."

And in the case of *People* v. *Trim,* 39 Cal. 75, 79, it is said: "The venue of the offense, in case of a principal, may be in one county, and that of an accessory before the fact, may, necessarily, be in another and different county."

In the case of *People* v. *Hodges,* 27 Cal. 340, it appears that one Pool was indicted jointly with three others for

murder alleged to have been committed in the county of
El Dorado, and it was further charged in the indictment
that the defendant within said county incited, counseled,
hired, and commanded the said Pool and others to commit
the said murder. The evidence introduced at the trial
showed that the acts wherewith Hodges stood charged were
performed by him in the county of Santa Clara. In con-
sidering the point that the trial court had no jurisdiction of
the offense charged against the defendant, the supreme
court said:

"We consider the objection to be well taken. Section
ninety-three of the Criminal Practice Act is as follows: 'In
the case of an accessory before or after the fact in the
commission of a public offense, the jurisdiction shall be in
that county where the offense of the accessory was com-
mitted, notwithstanding the principal offense was committed
in another county.' By section two hundred and fifty-five,
all persons connected in the commission of a felony, whether
they directly commit the act constituting the offense, or aid
and assist in its commission, though not present, are to be
indicted, tried, and punished, as principals. To that extent
'all distinction between an accessory before the fact and a
principal, and between principals in the first and second de-
grees' is expressly abolished by the section.

"There is no conflict between these sections. The latter
(sec. 255) requires that an accessory should be indicted,
tried and punished in the same manner as principals, and
section ninety-three fixes the place at or in which those
events are to transpire.

"Though the common law distinction between principal
and accessory is in the main obliterated, yet it is retained
for the purposes of venue. . . . Section two hundred and
fifty-five of the Criminal Practice Act relates to the frame
of the indictment against an accessory, the method of trial,
and the measure of punishment; and section ninety-three
determines the forum having jurisdiction of the offense."

The evidence in the instant case shows that defendant's
acts in "aiding and abetting" in the crime committed by de-
fendant Alford, or in being an "accessory" to such crime,
were committed by him wholly in the county of Los Angeles.
If, according to the verdict, defendant was not guilty of

"conspiracy," his acts as an "accessory" in Los Angeles County could not be so connected with the initial or the final act or acts of Alford in the county of San Bernardino in the perpetration of the offense, as to give the court of that county jurisdiction. Such being the facts, according to the statute (sec. 791, Pen. Code) and the cases cited, the jurisdiction as to defendant Huling was in the county where his offense as an accessory was committed, "notwithstanding the principal offense was committed in another county."

In the case of *People* v. *Staken*, 40 Cal. 599, where three defendants were jointly indicted for the crime of grand larceny committed in one county and where the evidence showed that the defendant on trial was not present in the county at the time of the theft and did not participate in the larceny, but subsequently, with a guilty knowledge that it was stolen, received the stolen property in another county and aided in disposing of the same for the joint benefit of himself and the perpetrator of the larceny, it was held that the defendant could not be convicted of larceny in the county where the crime was committed. In speaking of the matter the supreme court said: "His offense, whatever it was, would, upon this hypothesis, appear to have been committed in the county of Yuba, and not in the county of Placer, and the courts of the latter county would consequently have no jurisdiction to inquire into the case."

The action herein having been tried in San Bernardino County, it follows that the court was without jurisdiction in the matter, and for that reason the judgment must be reversed.

Appellant directs attention to several other alleged prejudicial errors in the record; but in view of the fact that none of them is of such a character that a recurrence thereof is likely, it becomes unnecessary to devote attention thereto.

The judgment and the order denying the motion for a new trial are reversed.

Conrey, P. J., and Curtis, J., concurred.