STATE OF NEBRASKA, APPELLEE, v. MYRON E. KARSTEN, APPELLANT.

231 N. W. 2d 335

Filed July 3, 1975. No. 39840.

Max A. Wilson and Griffiths & Gildersleeve, for appellant.

Paul L. Douglas, Attorney General, and Harold Mosher, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

BOSLAUGH, J.

The defendant appeals from a conviction for conspiracy. The amended information alleged the defendant, Myron E. Karsten, and Charles E. Sliger had conspired with Thomas H. Spencer to commit an assault with intent to inflict great bodily injury upon James Michael Donelan, III.

The record shows the defendant and Sliger were residents of Scottsbluff, Nebraska. Spencer was an employee of Sliger. Donelan was a resident of Sterling, Colorado.

The defendant and Donelan had been good friends. In 1973, marital trouble developed between the defendant and his wife, Thelma. When the defendant learned that Donelan was dating Thelma, the defendant asked Donelan not to see her, but Donelan refused. The defendant and Sliger then developed a plan to have someone assault Donelan in Sterling, Colorado, and hired Spencer for that purpose.

On December 22, 1973, Spencer agreed to "beat up" Donelan for $1,000. On the following day Spencer contacted the sheriff of Banner County, Nebraska. An arrangement was made for Spencer to pretend to perform the agreement to assault Donelan while cooperating with various law enforcement agencies in Nebraska and Colorado.

Sliger paid Spencer $450 in advance that had been supplied by the defendant. On December 27, 1973, Sliger took Spencer to Sterling, Colorado, and furnished Spencer with a key to Donelan's residence. At Sterling, Colorado, the sheriff there gave Spencer a billfold purporting to belong to Donelan. Spencer returned to Nebraska and told Sliger that he had broken both of Donelan's arms and one leg and wanted his money. Sliger then paid Spencer $500 that had been supplied by the defendant and which represented the balance due Spencer under the agreement.

No assault upon Donelan ever took place and Spencer testified that he at no time intended to perform his agreement to beat up Donelan.

There were many conflicts in the evidence but the jury could find that the defendant and Sliger had conspired to hire Spencer to assault Donelan in Colorado. The principal assignment of error is that the evidence failed to show a crime had been committed in Nebraska.

It is a fundamental rule that in this state all public

offenses are statutory; no act is criminal unless the Legislature has in express terms declared it to be so; and no person can be punished for any act or omission which is not made penal by the plain import of the written law. State v. Hauck, 190 Neb. 534, 209 N. W. 2d 580; State v. Buttner, 180 Neb. 529, 143 N. W. 2d 907; State v. Tatreau, 176 Neb. 381, 126 N. W. 2d 157; State v. Coomes, 170 Neb. 298, 102 N. W. 2d 454. A person may not be convicted of a crime unless his conduct, however reprehensible, is made penal by the plain import of the written law.

It is also a fundamental rule that criminal and penal laws are essentially local in character. Ordinarily, no penalty can be incurred under the law of this state except for transactions occurring within this state, and our state law has no extraterritorial effect. State v. Hyslop, 131 Neb. 681, 269 N. W. 512. A conspiracy in this state to do something in another state which is lawful in that state is not a crime in this state. A conspiracy in Nebraska to gamble in Nevada is a convenient illustration of that principle.

The Nebraska conspiracy statute applies only to a conspiracy to commit a felony or to defraud the state. § 28-301, R. R. S. 1943. The information alleged a conspiracy to commit an assault with intent to inflict great bodily injury. Such an assault would be a felony in Nebraska, and the jury was instructed in regard to the Nebraska law. § 28-413, R. S. Supp., 1974. However, the Nebraska assault statute has no force in Colorado where the assault which was the subject of the conspiracy in this case was to have taken place. It was error for the District Court to submit the case to the jury upon the theory that Nebraska law was applicable to an act which was to be performed in Colorado.

In People v. Buffum, 40 Cal. 2d 709, 256 P. 2d 317, the defendants had conspired in California to commit abortions in Mexico. The California Supreme Court held that the California statute which prohibited abor-

tions did not apply to abortions performed in Mexico; and the California conspiracy statute did not apply to a conspiracy to perform abortions in Mexico. The court said: "A conspiracy may be established by showing that there was an agreement between two or more persons to commit a crime and that an act was done in California to effect the object of the agreement. (Pen. Code, §§ 182, 184; see People v. Daener, 96 Cal. App. 2d 827, 831 [216 P. 2d 511]; People v. Benenato, 77 Cal. App. 2d 350, 358 [175 P. 2d 296]; People v. Huling, 71 Cal. App. 144, 146 [234 P. 924].) The object of defendants' agreement, as alleged in the indictment, was 'to violate section 274, Penal Code of the State of California.' No other unlawful purpose was stated, and defendants, of course, cannot be punished for conspiracy unless the doing of the things agreed upon would amount to a violation of section 274. The statute makes no reference to the place of performance of an abortion, and we must assume that the Legislature did not intend to regulate conduct taking place outside the borders of the state. (See People v. Chapman, 55 Cal. App. 192, 197 [203 P. 126]; Foley Bros. v. Filardo, 336 U. S. 281, 284-286 [69 S. Ct. 575, 93 L. Ed. 680]; American Banana Co. v. United Fruit Co., 213 U. S. 347, 356-357 [29 S. Ct. 511, 53 L. Ed. 826].) Similarly, section 182 of the Penal Code, standing alone, should not be read as applying to a conspiracy to commit a crime in another jurisdiction."

The problem that is presented by this case is one that can be solved by legislation. The Model Penal Code, drafted by the American Law Institute, contains a provision designed to remedy this situation. Section 1.03 relating to territorial applicability provides in part: "(1) Except as otherwise provided in this Section, a person may be convicted under the law of this State of an offense committed by his own conduct or the conduct of another for which he is legally accountable if: * * *

"(d) conduct occurring within the State establishes

complicity in the commission of, or an attempt, solicitation or conspiracy to commit, an offense in another jurisdiction which also is an offense under the law of this State; * * *." Model Penal Code, Proposed Official Draft, Art. 1, § 1.03. Similar provisions have been enacted in many states. However, in the absence of such legislation, the Nebraska conspiracy statute does not apply to a conspiracy to commit a felony in another jurisdiction.

It is unnecessary to consider the other assignments of error. The judgment of the District Court is reversed and the cause remanded.

REVERSED AND REMANDED.