REQUESTED BY: Dear Senator:
In your letter of March 14, 1978, you requested our opinion on the question of whether L.B. 959 contravened any provisions of state or federal constitutional law. We have examined this legislation in light of certain constitutional questions discussed below, and we have concluded that L.B. 959, in its present form, would be difficult to defend on constitutional grounds.
L.B. 959, entitled as `an act relating to real estate [and] to prohibit ownership of agricultural land as prescribed,' is composed of two sections. Section 1 provides as follows:
 "No corporation which has aliens as its stockholders nor any alien shall in any manner purchase or provide money to any person or corporation for the purpose of purchasing any agricultural land in this state."
At section 2, the legislation provides that any corporation or alien violating the provisions of section 1 shall be guilty of a class IV felony, and shall, in addition, forfeit all ownership of `all agricultural land in this state.' The bill also provides that ownership of this land will revert to the state, which may sell the land at public auction and deposit the proceeds into the state General Fund.
Section 1 of L.B. 959 appears to contain two separate prohibitions applying to both an alien and a corporation having any alien as a stockholder. The first prohibition prevents the alien or corporation from purchasing any agricultural land in Nebraska. The second prohibition appears to prevent any corporation, with an alien stockholder, or any alien from providing money to anyone (person or corporation) for the purpose of purchasing any agricultural land in this state. Therefore, we will first consider whether the Legislature may prohibit a certain class of corporation (one with an alien stockholder) or an alien from lending or providing money to one wishing to purchase Nebraska agricultural land. We would note at this point that the act does not limit its reach to Nebraska corporations or, for that matter, to nonresident aliens; rather, the legislation purports to include corporations and aliens regardless of their location, residential status, or principal place of business. For example, section 1 appears to prohibit a New York bank, which has an alien as a stockholder, from lending money to a Nebraska farmer intending to purchase agricultural land in this state. If section 1 could be interpreted to prohibit such activity, a number of constitutional problems become apparent.
Criminal and penal laws are essentially local in character. Ordinarily, no penalty should be incurred under the law of our state except for transactions occurring within out state. In other words, state law has no extraterritorial effect to prohibit activity which may be perfectly legal in the state in which the activity actually occurred. State v. Karsten, 194 Neb. 227, 231 N.W.2d 335
(1975). L.B. 959 contains no provisions to limit its territorial application, and declares illegal certain activity which may occur outside the State of Nebraska in full compliance with other states' laws.
Besides prohibiting certain financial transactions as discussed above, section 1 of L.B. 959 also proscribes the purchase, by any alien or corporation having an alien as a stockholder, of any agricultural land in this state. We are aware that an argument could be made that this was the only prohibition intended by the statute; the language relating to the money transactions being added only to prevent the formation of a `dummy corporation' in order to defeat the primary legislative purpose. However, it is a fundamental requirement of due process of law that a criminal statute be reasonably clear and definite. State v. Adams, 180 Neb. 542,143 N.W.2d 920 (1966). As the Nebraska Supreme Court stated in State v. Adkins, 196 Neb. 76, 80, 241 N.W.2d 655
(1976):
 "A penal statute creating an offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties. Any statute which forbids the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning, and differ as to its application, violates the first essential of due process of law. . . ."
It is our opinion, therefore, that at best, the prohibited activity defined in section 1 is ambiguous; at worst, it constitutes an attempt to extend Nebraska statutory law extraterritorily.
Finally, we would note, parenthetically, other constitutional problems apart from those discussed above. A previous opinion of our office addressed the question of whether the Legislature may treat separately corporations owning agricultural land from corporations owning other types of property.
See Report of the Attorney General, 1975-1976, No. 5 at p. 5. The concerns we expressed therein may apply to this legislation to the extent the sanctions of section 1 apply only to corporations wishing to purchase `agricultural land.'
It is also questionable whether it is appropriate for legislation to distinguish between corporations having no aliens as stockholders and corporations having a single alien stockholder. Lehndorff Geneva, Inc. v. Warren, 74 Wis.2d 839 [74 Wis.2d 369], 246 N.W.2d 815 (1976). Finally, legislation which provides for the seizure of an alien's property, as opposed to providing a time period for one to sell or dispose of the property, may raise certain due process considerations.Oyama v. California, 332 U.S. 633 (1948);Annot. Alien Land Laws, 92 L.Ed 281 (1948).
We have mentioned these further constitutional concerns, apart from the problems we noted given the ambiguity of section 1, to avoid any misunderstanding of our opinion in respect to this proposed legislation. While we appreciate the apparent legislative concerns in respect to alien ownership of Nebraska farm land, we cannot overlook certain constitutional guidelines on how such statutes may be properly enacted and enforced.