### Porfirio Vasquez, petitioner.

Norfolk. December 10, 1998. - February 9, 1999.

Present: Wilkins, C.J., Abrams, Lynch, Greaney, Fried, Marshall, & Ireland, JJ.

*Habeas Corpus. Extradition and Rendition. Constitutional Law,* Extradition. *Due Process of Law,* Jurisdiction over nonresident. *Jurisdiction,* Nonresident. *Uniform Reciprocal Enforcement of Support Act.*

Any technical defect in a Governor's warrant, issued for the arrest of a Massachusetts resident to be held for rendition to the State of Oregon, was cured by the supporting papers supplied by the Governor of Oregon [844-845], and a Superior Court judge correctly denied the resident's petition for a writ of habeas corpus challenging his restraint on the warrant [845-847].

The jurisprudence of personal jurisdiction has no bearing on the question whether a person may be extradited to another State and tried there for crimes under that State's laws. [847-850]

Whether Oregon may prosecute for criminal nonsupport a Massachusetts resident who has never been to Oregon, is a question properly raised in the first instance in the courts of Oregon, rather than in a challenge to otherwise proper rendition proceedings following the resident's arrest on a Governor's warrant. [850-851]

Petition for a writ of habeas corpus filed in the Superior Court Department on July 3, 1996.

The case was heard by *Phillip Rivard-Rapoza,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Christine A. Maglione (Michael G. Bongiorno* with her) for the petitioner.

*Gregory I. Massing,* Assistant Attorney General, for the Commonwealth.

Fried, J. The petitioner, Porfirio Vasquez, was arrested pursuant to a warrant issued by our Governor upon a requisition from the Governor of Oregon, requesting that the petitioner be extradited to Oregon to answer a charge of criminal nonsupport of his children, who reside in Oregon with their mother. Vasquez filed a petition for a writ of habeas corpus challenging the

constitutionality of the restraint of his liberty pending extradition. The Superior Court denied the petition and Vasquez appeals from that denial. We transferred the case to this court on our own motion. We affirm.

## I

The petitioner, a resident of Massachusetts, was divorced in 1985 from Bonnie Stewart, with whom he has two children. He was also ordered at that time to make weekly child support payments, which he has failed to do. In 1987, Stewart and the two children moved to the State of Oregon, without the knowledge of the petitioner. The petitioner has never been to Oregon. Because the petitioner had failed to make any support payments under the 1985 order, Stewart brought a reciprocal support petition in Oregon in 1988 under the Uniform Reciprocal Enforcement Support Act. After authorities in Massachusetts were unable to locate the petitioner to compel payment, officials in Lane County, Oregon, where the petitioner's children reside, obtained an indictment against him for criminal nonsupport. The indictment charges that the petitioner "did knowingly and unlawfully refuse and neglect without lawful excuse to provide support" for his children while they resided in Lane County. In 1996, Oregon requested the petitioner's extradition to that State to be tried on the criminal charge, in response to which the Governor of Massachusetts issued a Governor's warrant for the petitioner's arrest. Upon being arrested on that warrant in July, 1996, the petitioner filed the petition at issue here and the Superior Court issued a temporary restraining order prohibiting the Commonwealth from extraditing him to Oregon pending the disposition of this case.

## II

In his petition for a writ of habeas corpus, Vasquez claims that the Commonwealth's restraint of his liberty is unlawful. See G. L. c. 248, § 35 ("No person shall be deprived of his liberty or held in custody . . . against his will" by the Commonwealth in violation of "due process of law"). He claims that the courts of Oregon do not have personal jurisdiction over him and, therefore, the Oregon indictment against him for criminal nonsupport is invalid. To succeed in his claim, the petitioner must show that the Commonwealth has unlawfully restrained him; it will not suffice to allege some future violation of his rights by Oregon.

## A

The petitioner did not claim that the Governor's warrant or supporting papers are facially defective. On appeal, the petitioner challenges the factual accuracy of the Governor's warrant, which recites that he is a "fugitive from the justice of [Oregon] and has taken refuge in this Commonwealth." It is undisputed that the petitioner has never been in Oregon and, therefore, that the statement that he is a fugitive from that State cannot be accurate. But because he raises this issue for the first time in this appeal, we need not consider it. Moreover, even if he had made the claim below, it would afford him no relief because the technical defect in the warrant is cured by the supporting papers supplied by the Governor of Oregon, which allege that the petitioner, "while outside the boundaries of [Oregon] committed an act intentionally resulting in said crime in [Oregon]." See, e.g., *Harris, petitioner*, 309 Mass. 180, 183 (1941); *Grubbs* v. *State*, 363 So. 2d 121, 122 (Ala. 1978) (where rendition warrant defective, court may look to supporting papers); *Harrison* v. *State*, 38 Ala. App. 60, 64 (1954); *Papas* v. *Brown*, 88 Ill. App. 3d 471, 476 (1980); *Clayton* v. *Wichael*, 258 Iowa 1037, 1042 (1966) (statement in Governor's warrant that defendant was fugitive "must be disregarded as surplusage" and resulted in no prejudice to defendant extradited under statute similar to statute employed in instant case). The allegation in the supporting papers provides a sufficient basis for extradition under G. L. c. 276, § 13, which states: "The governor may also surrender, on demand of the executive authority of any other state, any person in this commonwealth charged in such other state . . . with committing an act in this commonwealth, or in a third state, intentionally resulting in a crime in . . . the demanding state." The provisions of § 13 are incorporated by reference into G. L. c. 209D, § 8-801 (*c*), under which the petitioner is being extradited.[1] Thus, the arrest and restraint of the petitioner do not violate G. L. c. 209D, § 8-801.[2] Nor do they violate any other statutory provisions pertinent to

---

[1]That section provides in part: "A provision for extradition of individuals not inconsistent with this chapter applies to the demand even if the individual whose surrender is demanded was not in the demanding state when the crime was allegedly committed and has not fled therefrom."

[2]General Laws c. 209D, § 8-801 (*b*), provides in part: "The governor of this commonwealth may: . . . (2) on the demand by the governor of another state, surrender an individual found in the commonwealth who is charged

his extradition. General Laws c. 276, § 14, requires that the request for extradition from the demanding State be in writing and allege one of several circumstances, including that the person sought to be extradited "committed in this commonwealth or in a third state an act intentionally resulting in a crime in the demanding state." The requisition supplied by the Governor of Oregon certifies in writing that "the accused while outside the boundaries of this State committed an act intentionally resulting in said crime in this State." Thus, both requirements of § 14 have been fulfilled.[3]

## B

The petitioner also claims that his arrest and detention pursuant to the Governor's warrant deprive him of liberty without due process of law because the courts of Oregon lack personal jurisdiction over him. The petitioner urges that we hold that the minimum contacts analysis applicable to personal jurisdiction in civil matters, see, e.g., *Kulko* v. *Superior Court*, 436 U.S. 84, 92 (1978), should also apply in this context and that he may not be extradited unless the courts of Massachusetts determine that, pursuant to that analysis, he had sufficient contact with Oregon to allow its courts properly to exercise personal jurisdiction over him if he were extradited.

The petitioner's claim that Oregon has no personal jurisdiction over him is, at best, questionable. Several courts have specifically noted that the minimum contacts analysis applied in *Kulko* is inapplicable in the criminal context. See, e.g., *State* v. *Luv Pharmacy, Inc.*, 118 N.H. 398, 403-404 (1978) (application of minimum contacts analysis to individuals in criminal cases might "raise serious constitutional questions"); *Rios* v. *State*, 733 P.2d 242, 244 (Wyo.), cert. denied, 484 U.S. 833 (1987) (minimum contacts analysis has no application in criminal cases). One criminal case in which a minimum contacts test was applied dealt with a corporate defendant, and in applying the

criminally in the other state with having failed to provide for the support of an obligee."

[3] It must be noted that this is not a case falling under the extradition clause of the United States Constitution, which applies only where the individual sought to be extradited is a fugitive from the laws of the demanding State. See *Michigan* v. *Doran*, 439 U.S. 282 (1978). Were that clause applicable here, it would mandate the petitioner's extradition, removing any discretion on that subject from the executive or courts of this Commonwealth. See *id.*

minimum contacts analysis, the court specifically noted the distinction between individual and corporate defendants. See *United States* v. *Nippon Paper Indus. Co.*, 944 F. Supp. 55, 60-61 (D. Mass. 1996), rev'd on other grounds, 109 F.3d 1 (1st Cir. 1997), cert. denied, 522 U.S. 1044 (1998). We reach the merits of this claim below; at this point, it should be noted that to succeed in a habeas corpus petition, the petitioner must put in question not the personal jurisdiction of the Oregon courts, but rather the validity of his arrest and detention pursuant to a Governor's warrant issued under the laws of Massachusetts. And, of course, Massachusetts does have personal jurisdiction over him. See G. L. c. 276, § 13.

The petitioner argues that, if this court does not address his argument that Oregon lacks personal jurisdiction over him, he effectively will be barred from raising it in light of the Supreme Court's decision in *Frisbie* v. *Collins*, 342 U.S. 519, 522 (1952), citing *Ker* v. *Illinois*, 119 U.S. 436 (1886), which stated that, once a criminal defendant is present within a State, he has no valid claim that that State may not exercise personal jurisdiction over him. The petitioner's concern may well be valid, but it is beside the point. The cases dealing with personal jurisdiction address issues quite inapposite to the context of a criminal case. The leading cases, *International Shoe Co.* v. *Washington*, 326 U.S. 310 (1945), and *World-Wide Volkswagen Corp.* v. *Woodson*, 444 U.S. 286 (1980), dealt with the question whether the courts of one jurisdiction could render a judgment that was valid and binding against a defendant everywhere and so could be carried to another State, where enforcement could be had under the full faith and credit clause of the United States Constitution. Art. IV, § 1. See *World-Wide Volkswagen Corp.*, *supra* at 291 ("A judgment rendered in violation of due process is void in the rendering State and is not entitled to full faith and credit elsewhere"). *Kulko, supra* (California court may not order child support against defendant who did not reside in California and had only been there on two brief occasions), was such a case. The jurisprudence of personal jurisdiction has no bearing on the question whether a person may be brought to a State and tried there for crimes under that State's laws. Indeed *Frisbie* itself illustrates how inapposite the personal jurisdiction cases are in this context, for in *Frisbie*, the Court held that even if a defendant had been kidnapped and brought by illegal force before a State's court, that court had jurisdiction to try him for

crimes against that State. Accord *United States* v. *Alvarez-Machain*, 504 U.S. 655 (1992).

The petitioner's claim is more properly viewed as an argument that Oregon has no legislative jurisdiction to criminalize acts that occur outside the boundaries of the State. See, e.g., *Strassheim* v. *Daily*, 221 U.S. 280, 284-285 (1911); *State* v. *Miller*, 157 Ariz. 129, 132-133 (1988); *People* v. *Blume*, 433 Mich. 476, 480 (1993); *Hardy* v. *Betz*, 105 N.H. 169, 173-174 (1963); *State ex rel. Juvenile Dep't* v. *W.*, 34 Or. App. 437, 442 n.5 (1978); *State* v. *Winckler*, 260 N.W.2d 356, 360 (S.D. 1977); *State* v. *Gantt*, 201 Wis. 2d 206, 211-212 (1996). Cf. *Bigelow* v. *Virginia*, 421 U.S. 809, 822-824 (1975) ("Virginia Legislature could not have regulated . . . activity in New York, and obviously could not have proscribed the activity in that State"); *Osborn* v. *Ozlin*, 310 U.S. 53, 62-67 (1940); *Bonaparte* v. *Tax Court*, 104 U.S. 592, 594-595 (1881). Such a claim is not barred by the fact of an individual's presence within the prosecuting State. See, e.g., *State* v. *Klein*, 4 Wash. App. 736 (1971) (defendant permitted to appeal jurisdiction after being extradited to Washington and convicted there). Therefore, the petitioner will receive the same process of law if he is required to make this objection in the courts of Oregon as he would if he were allowed to make it in the courts of this Commonwealth. And if he is dissatisfied with the determination of this claim in the Oregon courts and if he has properly preserved it there, he may petition the Supreme Court of the United States for a writ of certiorari. See 28 U.S.C. § 1257 (1994).

Perhaps if Oregon's requisition were egregiously devoid of even a colorable claim of legislative jurisdiction, the Governor should not have honored it and, if he had, we should not allow it to stand as a basis for depriving a person of his liberty. But that is far from being the case here. See *Harrison* v. *State*, 38 Ala. App. 60, 64 (1954); *Smith* v. *Sheriff of Woodbury County*, 258 Iowa 1110, 1111-1112 (1966) (permitting extradition of defendant who had never been within demanding State); *Ex parte Coleman*, 157 Tex. Crim. 37, 39-42 (1952); *Cassis* v. *Fair*, 126 W. Va. 557, 563 (1944) ("No reason in law, expediency or comity has been suggested why extradition should be limited to those who were physically in the state at the time the crime was committed").

Whether Oregon may prosecute the petitioner for criminal non-support is a question of the extent of that State's extrater-

ritorial criminal jurisdiction. The general rule, accepted as "axiomatic" by the courts in this country, is that a State may not prosecute an individual for a crime committed outside its boundaries. See, e.g., *Nielsen* v. *Oregon*, 212 U.S. 315, 321 (1909); *Huntington* v. *Attrill*, 146 U.S. 657, 673 (1892); *Commonwealth* v. *Booth*, 266 Mass. 80, 84 (1929) (rule against extraterritorial application of criminal laws "is a general principle"); *State* v. *Cochran*, 96 Idaho 862, 864 (1975); *Trindle* v. *State*, 326 Md. 25, 31 (1992); *Blume, supra* at 480; *People* v. *Devine*, 185 Mich. 50, 52-53 (1915); *State* v. *Karsten*, 194 Neb. 227, 229 (1975); *State* v. *Hall*, 114 N.C. 909, 911 (1894) (rule is a "general principle of universal acceptance"); *Ex parte McNeely*, 36 W. Va. 84, 92 (1892); 21 Am. Jur. 2d § 343 (1981) (rule is "fundamental"); Allen & Ratnaswamy, *Heath* v. *Alabama*: A Case Study of Doctrine and Rationality in the Supreme Court, 76 J. Crim. L. & Criminology 801, 815 n.144 (1985). The source of this rule is unsettled and has not been ascribed to any particular constitutional provision, see, e.g., *State ex rel. Juvenile Dep't* v. *W., supra* at 442 n.5, yet it has been called by one commentator "too deeply embedded in our law to require justification." Laycock, Equal Citizens of Equal and Territorial States: The Constitutional Foundations of Choice of Law, 92 Colum. L. Rev. 249, 318 (1992).

Despite this general rule, however, a State is not deprived of jurisdiction over every criminal case in which the defendant was not physically present within the State's borders when the crime was committed. Two major exceptions to the territorial principle might permit Oregon to exercise jurisdiction over the defendant in this case, even though he has never been within its borders.

The "effects" doctrine[4] provides that "[a]cts done outside a jurisdiction, but intended to produce and producing detrimental

---

[4]This rule has been described in terms of "constructive presence" within a State although the defendant was not physically present. See, e.g., *Harrison* v. *State*, 38 Ala. App. 60, 64 (1954); *Pennington* v. *State*, 308 Md. 727, 731 (1987), quoting 1 C. Torcia, Wharton's Criminal Law § 14 (14th ed. 1978); *Commonwealth* v. *Thomas*, 410 Pa. 160, 164 n.3, cert. denied, 375 U.S. 856 (1963). It has also been called the "results theory." See *Keselica* v. *Commonwealth*, 24 Va. App. 115, 119 (1997).

Although some courts consider the effects doctrine to be an exception to the general rule against extraterritorial jurisdiction, see, e.g., *People* v. *Blume*, 433 Mich. 476, 480 (1993), others point out that it is not an exception at all, but a logical application of the general rule in that the crime occurs where the effect

effects within it, justify a State in punishing the cause of the harm as if he had been present at the effect." *Strassheim* v. *Daily, supra* at 285. The jurisdictional basis provided by *Strassheim* has been utilized by a number of States to permit prosecution of individuals not within the State at the time they violated the State's law,[5] and some have specifically used it to provide jurisdiction in nonsupport and custodial interference cases, on the theory that, although the offending parent was outside the State at the time he committed the crime, the detrimental effect occurred where the child resided with his or her guardian. See, e.g., *Poole* v. *State*, 60 Wis. 2d 152, 155-156 (1973) (nonsupport); *Rios* v. *State*, 733 P.2d 242, 244 (Wyo.), cert. denied, 484 U.S. 833 (1987) (custodial interference).

Many States have enacted jurisdictional statutes specifically permitting prosecution under the rule of *Strassheim*, and some courts, in upholding prosecutions of persons who committed criminal acts outside the State, are careful to cite these statutes as justification. See, e.g., *Poole, supra* at 155-156. Oregon has no such statute, but it does not necessarily follow that the Oregon courts are disabled from relying on the rule of *Strassheim*. The *Strassheim* Court itself made no reference to the need for such a statutory provision, and at least one State court has held specifically that application of the effects doctrine

___

is felt, not where the offender is located, see *State* v. *Hall*, 114 N.C. 909, 912 (1894).

[5]See *Wheat* v. *State*, 734 P.2d 1007, 1008 (Alaska 1987); *Trindle* v. *State*, 326 Md. 25, 32 (1992); *Blume, supra* at 480; *People* v. *Harvey*, 174 Mich. App. 58, 61 (1988); *State* v. *Hall, supra* at 912; *State ex rel. Juvenile Dep't* v. *W.*, 34 Or. App. 437, 442 n.5 (1978) (dicta); *State* v. *Winckler*, 260 N.W.2d 356, 360 (S.D. 1997) ("crime is committed where the criminal act takes effect . . . even though the accused is never actually present within the state's jurisdiction"); *Roberts* v. *State*, 619 S.W.2d 161, 164 (Tex. Crim. App. 1981); *State* v. *Doyen*, 165 Vt. 43, 49 (1996); *Keselica, supra* at 119; *Poole* v. *State*, 60 Wis. 2d 152, 155-156 (1973); *Rios* v. *State*, 733 P.2d 242, 244 (Wyo.), cert. denied, 484 U.S. 833 (1987). Cf. *Commonwealth* v. *Welch*, 345 Mass. 366 (1963) (Massachusetts had jurisdiction over bribery prosecution even though handing over of money occurred in New Hampshire because the harm caused by the crime was to a Massachusetts municipality). But see *State* v. *Mc-Cormick*, 273 N.W.2d 624, 625 (Minn. 1978) (despite statute specifically providing for this type of jurisdiction, court refused to vary from strict common law rule against extraterritorial criminal jurisdiction).

Some courts use the doctrine only to supply jurisdiction over crimes defined to include the consequence of the criminal act. See *Trindle, supra* at 32 (custodial interference); *Roberts, supra* at 164.

is not dependent on the existence of a jurisdictional statute explicitly providing for it. See *Rios, supra* at 244.[6]

A second ground on which Oregon might exercise jurisdiction over the petitioner is the "general criminal-law rule that a crime involving a failure to act is committed at the place where the act is required to be performed." *State* v. *Gantt*, 201 Wis. 2d 206, 211 (1996). See *Booth, supra* at 84; *People* v. *Jones*, 257 Cal. App. 2d 235, 236 (1967); *State* v. *Carr*, 107 N.H. 477, 478 (1966); *State* v. *Beam*, 181 N.C. 597, 598 (1921); *State* v. *McGill*, 115 Or. App. 122, 125 (1992) (crime was "one of omission, and jurisdiction resides in the place where the legal duty omitted is required to be performed"); *State* v. *Kane*, 625 A.2d 1361, 1363 (R.I. 1993); *State* v. *Doyen*, 165 Vt. 43, 48 (1996); *Klein, supra* at 738-740. Criminal jurisdiction under this rationale is not an exception to the general rule, but merely an application of it.

Several courts have used this theory as a basis for deciding that the crime of nonsupport occurs where the child resides, even if the parent has never been physically present within the prosecuting State. See, e.g., *Jones, supra* at 236 (parent had never been within State); *Klein, supra* at 738-740 (same). Cf. *Booth, supra* at 84 (in spousal nonsupport prosecution, "place of the need of the wife fixes jurisdiction of the crime even though the husband may not be there"); *Beam, supra* at 597 (spousal nonsupport).

Oregon specifically provides for criminal jurisdiction on this theory in a statute providing that a person is subject to prosecution under Oregon law if "[t]he offense consists of the omission to perform a legal duty imposed by the law of this state with respect to domicile, residence or a relationship to a person, thing or transaction in this state." Or. Rev. St. § 131.215(5) (1997). See *McGill, supra* at 125.

In light of the various bases for the lawful exercise of jurisdiction over the petitioner by Oregon, we see no impediment to his extradition to that State. Because the petitioner has not properly raised any other objections to the lawfulness of his detention by

---

[6]General Laws c. 276, § 13, which provides, "The governor may also surrender, on demand of the executive authority of any other state, any person in this commonwealth charged in such other state . . . with committing an act in this commonwealth, or in a third state, intentionally resulting in a crime in . . . the demanding state," stands as an explicit recognition in the law of this Commonwealth of the effects doctrine.

this Commonwealth pending extradition, the petition was properly denied.

The judgment of the Superior Court denying the petition for writ of habeas corpus is affirmed.

*So ordered.*