COMMONWEALTH *vs.* RICHARD PIMENTAL.

No. 00-P-261.

Bristol. October 22, 2001. - March 27, 2002.

Present: ARMSTRONG, C.J., DREBEN, LAURENCE, RAPOZA, & MILLS, JJ.

*Larceny. Firearms. Evidence,* Firearm, Hearsay. *Practice, Criminal,* Hearsay, Assistance of counsel, New trial.

At the trial of a criminal defendant charged with larceny of "one or more firearms" in violation of G. L. c. 266, § 20, the indictment, the Commonwealth's proof, and the judge's instructions to the jury plainly demonstrated that the Commonwealth was proceeding on a single theory of culpability, namely that the defendant stole pursuant to a single larcenous plan, with one or more firearms as proof of that plan; therefore, the Commonwealth's evidence, which demonstrated that the defendant stole several weapons, only two of which were "firearms" within the statutory definition, was sufficient proof of the crime charged [327-328], and a specific unanimity instruction regarding the theft of each weapon was not required [328-329].

At the trial of an indictment charging larceny of "one or more firearms" in violation of G. L. c. 266, § 20, where the defendant received custody of the firearms at issue through a gun buy-back program in his official capacity as a police officer, his personal retention and disposal of the firearms amounted to the theft of the "property of another" within the meaning of the statute. [328]

A criminal defendant failed to demonstrate that a trial judge erred by failing to strike, sua sponte, a gratuitous hearsay statement to which the defendant did not object. [330-331]

A criminal defendant failed to demonstrate that his trial counsel rendered ineffective assistance by failing to move to strike certain cumulative hearsay evidence, by making a tactical decision to abandon a line of questioning while cross-examining a Commonwealth witness, or by failing to request certain jury instructions to which the defendant was not entitled. [331-333]

A Superior Court judge properly within his discretion declined to hold an evidentiary hearing on a criminal defendant's motion for a new trial, where the defendant did not raise any substantial new issue of fact in his motion, and where the judge had shortly before presided at the defendant's trial. [333]

INDICTMENT found and returned in the Superior Court Department on December 29, 1997.

The case was tried before *Richard F. Connon*, J., and a motion for a new trial was considered by him.

*Michael Kendall* for the defendant.

*Thomas W. Dee*, Assistant Attorney General, for the Commonwealth.

MILLS, J. The defendant appeals from his conviction on a single-count indictment charging larceny of "one or more firearms," in violation of G. L. c. 266, § 30, and the denial of his motion for a new trial. He challenges the sufficiency of the evidence on the Commonwealth's theory of the case; the judge's failure, sua sponte, to give a specific unanimity instruction; the judge's failure, sua sponte, to strike certain hearsay evidence; the effectiveness of counsel; and the denial of his motion for a new trial without a hearing. We affirm.

1. *Factual background.* The jury could have found the following facts. The defendant, a Taunton police officer for thirty-three years, was appointed the coordinator of a "gun buy-back" program in 1994. The program invited citizens to deliver guns anonymously in exchange for cash or a gift certificate, on the condition that the collected guns be examined, inventoried, and delivered to the State police for destruction.[1] The program was administered by the Taunton police department and was designed to reduce the number of guns in the community. The defendant was assigned the duty of collecting and disposing of the guns and, as the coordinator, was responsible for delivering the guns to the State police and documenting this process. During the first and second collection sessions, 136 guns were collected, but of these, only 130 were delivered to the State police for destruction. The defendant never accounted for the six-gun disparity.

At trial, only four of the six missing guns were identified. The four identified guns were (1) a Mauser; (2) a Colt rifle (rifle); (3) a .357 Smith & Wesson police service revolver (Smith & Wesson); and (4) a .22 Jennings pistol (Jennings). The Smith & Wesson and the Jennings were capable of discharging a shot or bullet, thereby meeting the definition of "firearm" as defined

---

[1]In 1994, there were seven different collection sessions held on different dates and at several locations throughout Taunton.

in G. L. c. 140, § 121.[2] The rifle and the Mauser, however, were not capable of discharging a shot or bullet and, accordingly, are "guns," but not "firearms," as that term is defined by the statute.

After the first two collection sessions, the defendant brought a substantial number of guns to his home where he also kept his personal gun collection. The defendant was knowledgeable about the value of guns generally, and knew that the rifle and the Mauser were historic, collectible items of considerable value. During the time the defendant had possession of the guns and prior to his delivery of the 130 guns to the State police, he acted as though the guns were his personal property. For example, the defendant gave the Jennings to Robert Bowen, a man then dating his daughter, with instructions that Bowen "keep [his] mouth shut." Additional facts will be discussed as necessary.

2. *Theory of the case.* The defendant argues that proof of his indictment required evidence that each of the four identified guns could be discharged (i.e., that each was a "firearm") to take the Commonwealth's case to the jury. Relying on *Commonwealth* v. *Plunkett*, 422 Mass. 634, 638 (1996), the defendant claims that there must be a new trial if the jury, given two theories of guilt, return a general verdict when the evidence supports a guilty verdict on only one of those theories. The defendant's reliance on *Plunkett*, however, is misplaced, as he assumes incorrectly that each gun constitutes a separate and distinct theory of guilt. This is a case of one prosecution theory, and a single larcenous plan, with one or more items of evidence as proof of that plan.

The explicit language in the indictment states that the defendant stole "one or more firearms" and did so "pursuant to the execution of a general larcenous plan and scheme." The Commonwealth presented evidence that the defendant stole several weapons, two of which were "firearms" within the statutory definition. The judge charged the jury that the Commonwealth was required to prove that the defendant had "acted

---

[2]The statute defines "firearm" as "a pistol, revolver, or other weapon . . . from which a shot or bullet can be discharged and of which the length of the barrel . . . is less than sixteen inches." G. L. c. 140, § 121.

out of a single scheme, a continuing intent to steal. That even though time elapsed between the incidents, they were not separately motivated, but were part of a general scheme or a plan to steal." Within that framework, it is apparent the remaining guns, which did not meet the definition of "firearm," were nonetheless relevant to the existence of the defendant's continuing intent to steal. See *Jackson* v. *Commonwealth*, 430 Mass. 260, 262 n.4 (1999), cert. denied, 528 U.S. 1194 (2000). This view is bolstered further by the judge's clear instruction that the jury must find that the stolen property was in fact a "firearm," a term the judge proceeded to define. See note 3, *infra*. Consequently, the indictment, the Commonwealth's proof, and the judge's instructions plainly presented a single theory of culpability, directed to a single larcenous plan, involving multiple stolen items. Indeed, by its reference to "one or more firearms," the indictment explicitly embraced the notion of several stolen items within the single charged offense.

3. *Proof to establish "property of another."* The defendant next argues that there was insufficient evidence to prove that the guns were the "property of another." Although the defendant acknowledges that the Commonwealth did not need to prove precisely who owned the guns, he claims that the Commonwealth was required to prove that the defendant did not have the right to dispose of the guns "in the manner he saw fit."

Direct proof of ownership, although preferable, is not essential, since the statute requires a showing only that the defendant was not the owner. See *Commonwealth* v. *Souza*, 397 Mass. 236, 238 (1986). Compare *Commonwealth* v. *Bundza*, 54 Mass. App. Ct. 76, 77-78 (2002). Where, as here, the defendant received custody of the weapons through a public program in his official capacity as a Taunton police officer, he did not personally gain ownership of them. Nor did he become owner of the weapons by his continued custody of them. As the defendant did not personally have an ownership claim to the weapons, his retention and personal disposition of them amounted to the theft of the "property of another" within the meaning of the statute.

4. *Specific unanimity instruction.* The defendant next claims

that the judge erred by not, sua sponte, giving a specific unanimity instruction. The defendant argues that there were "four separate factual theories" requiring a specific instruction that the jury be unanimous as to at least one theory. In so arguing, the defendant essentially equates "theory" with "gun." That argument assumes the proposition we rejected in part 2 of this opinion, that the crime charged here stated multiple theories of criminal liability or separate criminal incidents. It did not. Compare *Commonwealth* v. *Accetta*, 422 Mass. 642, 646 (1996); *Commonwealth* v. *Grandison*, 433 Mass. 135, 146 (2001).

With respect to crimes involving larceny, when it appears that successive takings are actuated by a single, continuing criminal intent or pursuant to the execution of a general larcenous scheme, the prosecutor may charge them as a single crime. See *Commonwealth* v. *Murray*, 401 Mass. 771, 772-774 (1988). See also *Commonwealth* v. *Stasiun*, 349 Mass. 38, 44 (1965) (successive solicitations for a bribe deemed one criminal act under G. L. c. 268, § 8); *Commonwealth* v. *England*, 350 Mass. 83, 86-87 (1966) (successive thefts of money under the general larceny statute, G. L. c. 266, § 30, may be charged as one larceny).

At trial, there was sufficient evidence that the four identified guns were from the program the defendant coordinated. There was ample evidence that the defendant stole the four guns as part of a common scheme or plan and that the Smith & Wesson and the Jennings were "firearms."[3] It was clear that the other two were not.

"When a single count is charged and where the spatial and temporal separations between acts are short, that is, where the facts show a continuing course of conduct, rather than a succession of clearly detached incidents, a specific unanimity instruction is not required." *Commonwealth* v. *Thatch*, 39 Mass. App. Ct. 904, 905 (1995). There was no error.[4]

---

[3]The judge gave a precise instruction of the required proof of "firearm." We assume that the jury followed the instructions. *Commonwealth* v. *Watkins*, 425 Mass. 830, 840 (1997).

[4]The defendant's reliance upon *Commonwealth* v. *Conefrey*, 420 Mass. 508 (1995), is misplaced. In *Conefrey*, the defendant requested, in writing, that the judge give a specific unanimity instruction. See *id.* at 510-511. The judge

5. *Failure of the trial judge to strike hearsay testimony.* The defendant next complains that the judge failed to strike, sua sponte, a gratuitous hearsay statement by a witness. Bowen, a prosecution witness, testified that the defendant brought a substantial number of buy-back weapons to his home and had given the Jennings to him under instructions that he "keep [his] mouth shut." Bowen also testified that the defendant's daughter had shown him a photograph depicting a gun he recognized (the Smith & Wesson). He continued: "She said that it was her gun, that her father had given it to her, and that it was one of the revolvers that came from the gun buy back." This testimony elicited no objection.

The defendant cites no authority for the proposition that a trial judge is required to strike, sua sponte, hearsay evidence to which there was no objection.[5] On the contrary, in *Commonwealth* v. *Stovall,* 22 Mass. App. Ct. 737, 743 (1986), we stated that the trial judge's responsibility to conduct a fair trial does not require her to act as an attorney for a pro se litigant. Certainly, a defendant represented by counsel is entitled to no greater process.[6] Moreover, as discussed below, the statement was largely cumulative of other evidence. There was no error

refused and the defendant objected. See *ibid. Conefrey* was a case of indecent assaults and batteries by a father on his daughter, during the course of a year, with evidence of eight separate incidents, with no specific dates for any of the incidents. The court noted that, "where evidence of separate incidents is offered to the jury and any one incident could support a conviction, a general unanimity instruction *may not* suffice to ensure that the jury actually does reach a unanimous verdict" (emphasis supplied). *Id.* at 513. But here the instruction was not requested. The charge and proof were not complex and there was no variance between the indictment and the proof at trial. There were no other factors creating any genuine risk of jury confusion. There was no error.

[5]Absent objection, jurors are entitled to give hearsay such probative effect as they deem appropriate. See *Abraham* v. *Woburn,* 383 Mass. 724, 726-727 n.1 (1981). We deem the statement to be hearsay, contrary to the Commonwealth's argument that it is within a recognized exception as evidence of "a plan, common scheme, or course of conduct."

[6]In *Stovall,* as in this case, the prosecutor did not frame the questions to elicit hearsay testimony from the witness. See *Commonwealth* v. *Stovall,* 22 Mass. App. Ct. 737, 743 (1986). The characterizations that Bowen's statement was "presented by the Commonwealth" and "allowed" by the court are inaccurate.

here, let alone a substantial risk of a miscarriage of justice.[7]

6. *Effectiveness of counsel.* The defendant next claims that his counsel failed to represent him adequately, and acknowledges that he must establish "serious incompetency, inefficiency, or inattention of counsel — behavior of counsel falling measurably below that which might be expected from an ordinary fallible lawyer — and, if that is found, then, typically, whether it has likely deprived the defendant of an otherwise available, substantial ground of defence." *Commonwealth* v. *Saferian*, 366 Mass. 89, 96 (1974). A defendant must show, "in addition to the claimed ineffectiveness, that 'better work [by counsel] might have accomplished something material for the defense' " (footnote omitted). *Commonwealth* v. *Bolduc*, 375 Mass. 530, 540 (1978), quoting from *Commonwealth* v. *Satterfield*, 373 Mass. 109, 115 (1977). The defendant's three principal claims, both individually and collectively, fail to establish his claim of ineffective assistance of counsel.

(a) *Failure to request relief as to the gratuitous Bowen hearsay.* The defendant first argues that Bowen's gratuitous hearsay statement was not cumulative, but was the only evidence linking the defendant to the Smith & Wesson, and that counsel's failure to move to strike constituted ineffective assistance. The record is to the contrary.

The person who surrendered the Smith & Wesson at the program testified that the gun was entrusted to the defendant's care while he was in charge of the program and before it disappeared from the inventory. Another witness testified that the Smith & Wesson was not listed on the inventory sheet from the program and that the defendant was responsible for administering the program. Bowen testified that he had seen the Smith & Wesson in the defendant's home when he had helped the defendant carry milk crates filled with guns into the defendant's basement. Because the statement was largely cumulative, we conclude that counsel's failure did not deprive the defendant of

[7]We exercise our extraordinary and rarely used discretion to review an unpreserved error so as to avoid a substantial risk of a miscarriage of justice only when the appellant clearly demonstrates that a serious and obvious error did in fact occur, which is not the case here. See *Commonwealth* v. *Beauchamp*, 49 Mass. App. Ct. 591, 604 (2000).

a substantial ground of defense. See *Commonwealth* v. *Curtis*, 417 Mass. 619, 624-625 n.4 (1994).

(b) *Cross-examination of Frisbee.* The Commonwealth called Jason Frisbee, Bowen's friend, to corroborate Bowen's testimony that he had given the Jennings to Frisbee. Frisbee identified the Jennings as the gun given to him by Bowen and testified that Bowen had told him that the defendant gave him the gun as a gift, that it was from the program and that "according to any records it was nonexistent." On cross-examination, Frisbee admitted that he was not licensed to carry a firearm and that he knew it was illegal to possess the Jennings. Immediately thereafter, the judge conferred with counsel at sidebar, and informed them: "I'm going to advise him that he's now admitting to a violation of a criminal statute which would make him subject to criminal prosecution by his admission alone that he had possession or came in possession of a gun." The judge also indicated that he must "appoint counsel for him." Defense counsel stated that his questioning of Frisbee went to his credibility "since he told the State police of this, and they haven't touched him with it." However, after the judge made some additional comments showing reluctance to have this matter pursued, counsel abandoned any further questioning of Frisbee concerning his admission of firearm possession. The defendant now claims prejudice from the abandonment, speculating that Frisbee "might have asserted his right against self-incrimination," the defendant could then have filed a motion to strike, and "the Court would have had to strike [Frisbee's] entire testimony."

Counsel's decision to abandon the Frisbee questioning did not amount to ineffective assistance. It is highly speculative to assume what might have developed in these circumstances. Even if the privilege had been claimed, there is no assurance that a motion to strike would have been successful. When a witness "not a party to a cause, voluntarily testifies to a fact of an incriminating nature[,] he waives his privilege as to subsequent questions seeking related facts." *Taylor* v. *Commonwealth*, 369 Mass. 183, 189 (1975). Even if applicable, we think it likely that the privilege had been lost. Additionally, the defendant sought and received extensive pretrial discovery. Counsel may have concluded that any attempt to discredit Frisbee by questioning him about promises, rewards, or inducements would have backfired or have

been ineffective. In any event, his tactical decision to abandon this line of questioning was not "manifestly unreasonable." *Commonwealth* v. *Adams*, 374 Mass. 722, 728 (1978).

(c) *Failure to request specific unanimity instruction.* As we have discussed above, the defendant was not entitled to a specific unanimity instruction. Accordingly, there was no error in defense counsel not requesting one.

7. *Lack of a hearing on defendant's new trial motion.* The defendant argues that the trial judge erred in denying his motion for a new trial without a hearing.

The defendant moved for a new trial pursuant to Mass.R. Crim.P. 30(b), 378 Mass. 900 (1979). He did not file any affidavits in support of his motion, see Mass.R.Crim.P. 30(c)(3), 378 Mass. 901 (1979), and although he requested oral argument, he did not request an evidentiary hearing. It is, thus, fair to conclude that the defendant was proceeding on the facts from the existing trial record.

The decision whether or not to hold an evidentiary hearing on a motion for a new trial is left largely to the sound discretion of the judge. See *Fogarty* v. *Commonwealth*, 406 Mass. 103, 110 (1989). "In exercising this discretion the judge must decide whether a substantial issue necessitating an evidentiary hearing has been raised. . . . In doing so, the judge looks not only to the seriousness of the claims presented, but also to the adequacy of the defendant's factual showing on those claims." *Id.* at 111. See *Commonwealth* v. *Wheeler*, 52 Mass. App. Ct. 631, 635-636 (2001).

Because the defendant did not raise any substantial new issue of fact in his motion and because the motion judge was also the trial judge and had shortly before presided at the trial (which included a motion for required finding of not guilty at the close of the evidence), it was within the judge's discretion to deny the defendant's motion without a hearing.

*Judgment affirmed.*

*Order denying motion for a new
trial affirmed.*