NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

22-P-208                                          Appeals Court

COMMONWEALTH  vs.  JOSHUA Y. JENKINS.


No. 22-P-208.

Plymouth.     July 6, 2023. – July 8, 2024.

Present:  Sacks, Grant, & Smyth, JJ.


Trafficking.  Practice, Criminal, Motion to suppress, Admissions
     and confessions.  Evidence, Admissions and confessions.
     Constitutional Law, Admissions and confessions, Reasonable
     suspicion.  Search and Seizure, Reasonable suspicion.


     Indictments found and returned in the Superior Court
Department on June 22, 2018.

     A pretrial motion to suppress evidence was heard by
Cornelius J. Moriarty, II, J.; a motion for reconsideration was
heard by him; and the cases were tried before William F.
Sullivan, J.


     Thomas J. Gleason for the defendant.
     Cailin M. Campbell, Assistant District Attorney, for the
Commonwealth.


     GRANT, J.  Convicted by a Superior Court jury of

trafficking for sexual servitude, G. L. c. 265, § 50 (a), the

defendant appeals.[1]  He argues that the motion judge erred in denying his motion to suppress his statement to police, and that the evidence at trial was insufficient to prove that while in Massachusetts he committed conduct prohibited by the sex trafficking statute.  We affirm.

Background.  Based on the evidence at trial, the jury could have found as follows.  In early 2018, the defendant met the victim at an apartment complex in Plymouth.  The victim had just been released from jail and was using heroin and "crack" cocaine.  In text messages, the defendant told the victim of his idea to go to Las Vegas to make money.  In text messages between February 19 and 23, 2018, the defendant told the victim that he was in Plymouth, promised to pay for her plane ticket to Nevada, and explicitly described the sex acts she would perform there and the amounts she would charge.  In a text message on February 23, the defendant told the victim that he had arrived in Nevada.  In subsequent text messages, the defendant told the victim that he had booked her flight from Boston to Las Vegas, instructed her how to get to Logan Airport, and again described the sex acts that he expected her to perform in Nevada and the prices

_____

[1] At the request of the Commonwealth, a charge of resisting arrest was dismissed.  The trial judge allowed a required finding of not guilty on a charge of unarmed robbery, and the jury acquitted the defendant of assault and battery.

she would charge.  On February 24, the victim traveled from Plymouth to Las Vegas; she had never been on a plane before.

On March 6, 2018, the defendant and the victim were back at the apartment complex in Plymouth, where there was an altercation between them.  In an interview that afternoon, the defendant told Plymouth police Detective Gregory Smith that the victim was already working as a prostitute when she approached him about working together, and she followed him to Las Vegas voluntarily.  He admitted that he bought the victim's plane ticket from Boston to Las Vegas.  The defendant also admitted that he agreed to "help" the victim, that he "sent for her" to come to Las Vegas, and that the proceeds were "supposed to be split" "on a business level."

The defense theory was that the Commonwealth did not prove that the defendant enticed, recruited, or transported the victim to engage in commercial sexual activity.  In closing, defense counsel argued that the defendant was credible when he told police that it was the victim's idea to go to Las Vegas, and so he did not entice her; he did not recruit her because she was already working as a prostitute, and instead, "she recruited him"; and merely by paying for her plane ticket he did not transport her, as would a "pimp" who "drives [prostitutes] to their dates."  As to the defendant's admission to Detective Smith that the proceeds were "supposed to be split," counsel

4

argued that the Commonwealth did not prove that the defendant and the victim made that agreement while in Massachusetts. The jury convicted the defendant of trafficking for sexual servitude, and this appeal ensued.

Discussion. 1. Motion to suppress statements. The defendant moved to suppress evidence and statements, arguing that police obtained them as the result of an unlawful stop. After an evidentiary hearing at which Plymouth police Officer Derek Back testified, the motion judge initially allowed the motion to suppress, concluding that police did not have reasonable suspicion to stop the defendant.[2] The Commonwealth moved to reconsider, and the motion judge reopened the hearing with respect to suppression of the defendant's statements. At a second hearing, Detective Smith testified. The motion judge then reconsidered his ruling and denied the motion to suppress as to the statements.

The defendant argues that the motion judge erred in denying the motion to suppress after finding that the defendant's statements to Detective Smith were sufficiently attenuated from the unlawful stop. We review the motion judge's findings of fact to determine if they are clearly erroneous, but "review without deference the [motion] judge's application of the law to

---

[2] The motion judge was not the trial judge.

the facts as found." Commonwealth v. Johnson, 473 Mass. 594, 602 (2016). See Commonwealth v. Forbes, 85 Mass. App. Ct. 168, 170 n.2 (2014).

a. Facts found by motion judge. We summarize the facts found by the motion judge based on evidence at both hearings, supplemented by our own review of the documentary evidence including the video recording of the defendant's interview. In late February 2018, the victim's mother and sister came to the Plymouth police station and reported to Detective Smith their concerns about the victim being subjected to sex trafficking. In his subsequent investigation, Detective Smith determined the location of the victim's cell phone and learned that she was in Texas, traveling toward Houston. Based on an alert from Detective Smith, Texas police stopped a car in which the victim and the defendant were riding. The victim returned to Massachusetts, where Detective Smith tried unsuccessfully to contact her.

On March 6, 2018, in the Plymouth apartment complex, Officer Back and his partner saw the victim visibly upset and crying. The victim reported that someone had tried to beat her up and stolen her cell phone. She described her assailant as a Black man wearing "some gay-ass sweater" and told the officers the man's apartment number. Heading in that direction, the officers encountered a car being driven toward them by a man

later identified as the defendant, who was wearing what Officer Back described as "a very colorful, bright, and boisterous sweater."[3]  The officers stopped the car.  During a patfrisk of the defendant, police found two cell phones, one of which the victim identified as hers.  Police arrested the defendant for unarmed robbery.

Detective Smith heard a radio broadcast about that incident and recognized the defendant's and victim's names from his ongoing sex trafficking investigation.  Detective Smith went to the apartment complex and found the victim, who agreed to come to the police station where she was interviewed by Detective Smith.  After that interview, Detective Smith approached the defendant and asked if he would submit to an interview; the defendant agreed and was escorted to an interview room several hours after his arrest.  After waiving his Miranda rights, the defendant made the incriminating statements admitted at trial.

The motion judge ruled that the stop was unlawful because Officer Back did not have reasonable suspicion to stop the defendant's car based on information including the victim's description of her assailant's sweater, which the judge found

---

[3] A photograph of the defendant wearing the sweater was marked as an exhibit at the suppression hearing.  The defendant has not included a copy of the photograph in the record appendix on appeal.  The motion judge found that the sweater has "colorful, horizontal stripes embroidered with a pattern that eludes easy description."

was "subjective" and "could have equally applied to many other types of sweaters."[4]  However, on reconsideration, the motion judge ruled that any taint from the unlawful stop had dissipated by the time the defendant made the statements, and so their suppression was not required.

b.  Attenuation.  Whether a defendant's admission is sufficiently attenuated from a preceding unlawful arrest depends on the facts of the case assessed under four factors:  "(1) the temporal proximity of the admission to the arrest; (2) the presence of intervening circumstances between the arrest and the admission; (3) the observance of the Miranda rule subsequent to the unlawful arrest; and (4) the purpose and flagrancy of the official misconduct."  Commonwealth v. Damiano, 444 Mass. 444, 455 (2005), citing Kaupp v. Texas, 538 U.S. 626, 633 (2003).  It is the Commonwealth's burden to prove that the subsequent admission "is sufficiently attenuated from the underlying illegality so as to be purged from its taint."  Commonwealth v. Fredericq, 482 Mass. 70, 78 (2019), quoting Damiano, supra at 454.

---

[4] Neither party argues about the judge's rulings that the stop was unlawful and, as a result, that the evidence seized from the defendant (other than his statements to Detective Smith) must be suppressed.  Thus we do not consider those issues.

As to the first factor, the judge found that the temporal attenuation between the unlawful stop and the defendant's admission to Detective Smith was "relatively brief, no more than a few hours."  We agree with the motion judge that the brief amount of time that had passed is not necessarily dispositive.  "[I]n some circumstances, a lapse of time of as little as three hours from the illegal [arrest] to the decision to speak with police may be enough to dissipate the taint."  Commonwealth v. Long, 476 Mass. 526, 537 (2017).  See Commonwealth v. Sylvia, 380 Mass. 180, 184 (1980) (one and one-half hour interval sufficient).

As to the second Damiano factor, the presence of intervening circumstances, the judge concluded that Detective Smith's ongoing sex trafficking investigation was such a circumstance, "particularly given that [the victim], only minutes before, had provided Detective Smith with additional information pertaining to that investigation."  The defendant contends that the sex trafficking investigation "was not intervening" because it predated the unlawful stop.  That contention ignores that the victim's cooperation with Detective Smith's investigation contributed to the intervening circumstance.  In talking to Detective Smith, the defendant initially denied any involvement with commercial sexual activity, but once confronted with information the detective had

gathered in his investigation, including from the victim, the defendant made his damaging admissions. See Commonwealth v. Cruz, 442 Mass. 299, 307 (2004) (intervening circumstance was confrontation of defendant with fact that witness implicated him); Commonwealth v. Chongarlides, 52 Mass. App. Ct. 366, 376 (2001) (intervening circumstance was defendant's learning that witness implicated him).

As to the third Damiano factor, police adherence to the Miranda rule, the defendant conceded at the suppression hearing and again at oral argument that police abided by the requirements of Miranda. On appeal, the defendant does not argue that police committed any misstep with regard to his Miranda rights that would preclude application of the attenuation doctrine. Based on our own review of the video recording of the interview, we would see no merit to any such claim. Although police adherence to Miranda would not alone dissipate any taint from the unlawful stop, see Fredericq, 482 Mass. at 80-81, adherence is one factor that weighs in favor of dissipation.

Finally, as to the fourth Damiano factor, the motion judge concluded that the officers' conduct in stopping the defendant was not done for the purpose of obtaining his statement about the sex trafficking investigation, nor was the officers' conduct "flagrant." The motion judge found that the officers' decision

to stop the defendant "was largely a judgment call."  The motion judge based that finding in part on his viewing the photograph of the defendant's sweater, see note 3, supra, and concluding that the officers did not engage in flagrant misconduct when they deemed that the sweater fit the victim's description.  The defendant does not argue that the judge erred in so concluding.  Cf. Commonwealth v. Jones, 95 Mass. App. Ct. 641, 650 (2019) (patfrisk of defendant based on hunch, though "legally insufficient," "was not flagrant misconduct in the aftermath of a fatal shooting").

2.  Sufficiency of the evidence.  The jury convicted the defendant on a single indictment that alleged sex trafficking, G. L. c. 265, § 50 (a), of a single victim in Plymouth County on or about February 24, 2018.  The defendant argues that the jury did not hear sufficient evidence to prove that he committed that crime in Massachusetts.[5]  We consider the evidence in the light most favorable to the Commonwealth to determine if it "could have satisfied a rational trier of fact of each . . . element

_____

[5] Before trial, the defendant moved twice to dismiss the indictment, first for lack of jurisdiction and then for lack of venue.  Judges denied those motions, and the prosecutor commented during trial that the Commonwealth had obtained leave to proceed under G. L. c. 277, § 57A.  On appeal, the defendant does not raise the propriety of the denials of his motions to dismiss or the Commonwealth's authority to proceed under § 57A, and so we do not consider those issues.

beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677-678 (1979).

To prove that the defendant violated the sex trafficking statute, the Commonwealth was required to establish that he

> "knowingly . . . subject[ed], or attempt[ed] to subject, or recruit[ed], entice[d], harbor[ed], transport[ed], provide[d] or obtain[ed] by any means, or attempt[ed] to recruit, entice, harbor, transport, provide or obtain by any means, [the victim] to engage in commercial sexual activity . . . or cause[d] [the victim] to engage in commercial sexual activity."

G. L. c. 265, § 50 (a) (i). Focusing on several of those verbs, the defendant contends that he did not recruit or entice the victim to engage in commercial sexual activity because she had already worked as a prostitute, nor did he transport her by buying her a plane ticket from Boston to Las Vegas because he was already in Nevada when that transaction occurred.[6] Because the defendant's contentions rest on a view of the evidence that is not in the "light most favorable to the Commonwealth"

---

[6] The defendant did not request a specific unanimity instruction as to which of those verbs were the acts he committed. Although we need not decide the issue here, we note that such an instruction is not required where the Commonwealth's theory is that a defendant's sex trafficking was a "continuing course of conduct" or "a single criminal scheme or plan carried out consistently over time." Commonwealth v. Fan, 490 Mass. 443, 450 (2022), quoting Commonwealth v. Santos, 440 Mass. 281, 285-286 (2003), overruled on other grounds by Commonwealth v. Anderson, 461 Mass. 616, cert. denied, 568 U.S. 946 (2012).

(citation omitted), Latimore, 378 Mass. at 676-677, we are not persuaded.

The victim testified that while in Massachusetts the defendant told her of his plan to traffic her for sex. In text messages to the victim, the defendant explicitly described the sex acts he expected her to perform and the amounts she would charge. By text message, the defendant sent to the victim the plane ticket for her to travel from Boston to Las Vegas. Merely because the defendant sent some of those text messages, including the one transmitting the plane ticket, to the victim in Massachusetts after he said in a February 23 text message that he had arrived in Nevada did not diminish the Commonwealth's proof.[7] Those text messages and that transaction were part of the defendant's ongoing "single criminal scheme" to traffic the victim for sex. Commonwealth v. Fan, 490 Mass. 443, 451 (2022). See Commonwealth v. Lowery, 487 Mass. 851, 867-868

---

[7] The defendant moved in limine to exclude evidence of text messages and subsequent bad acts, arguing that "the moment that [the defendant] gets on the plane, [the victim] gets on the plane, and she's no longer in the [S]tate of Massachusetts anymore, the crime has finished." The trial judge disagreed, and he permitted the Commonwealth to introduce text messages sent after the victim had arrived in Nevada as relevant to the defendant's knowledge and the victim's intent. The trial judge commented, "I'm not sure there is that much prejudice, in the sense that there has already been a lot of harmful information that comes out that was done while in Massachusetts." On appeal, the defendant does not raise any claim about admissibility of the text messages, and so we do not consider that issue.

(2021) (evidence of defendant's vulgar text messages to victim spanning six weeks before arrest proved defendant's knowledge of victim's commercial sexual activity).

Perhaps most powerfully, the defendant's admissions to police proved that he trafficked the victim for sex. He admitted that he knew that the victim was going to Las Vegas to work as a prostitute, that he bought her plane ticket, and that he "sent for" her. The defendant also admitted that the proceeds were "supposed to be split" "on a business level." Contrary to the defendant's argument in closing, where there was no evidence that the defendant and the victim reached the agreement about splitting the proceeds only after he arrived in Nevada, the jury could have found, in the light most favorable to the Commonwealth, that he made that agreement before he left Massachusetts, and certainly before the victim left.[8] Cf.

---

[8] At the defendant's request, the trial judge instructed the jury that the Commonwealth was required to "prove that the crime of human trafficking as I defined it above occurred in Massachusetts or that, if done outside of Massachusetts, was done with the intention of producing detrimental effects in and within the Commonwealth of Massachusetts." That instruction seems to have been paraphrased from Vasquez, petitioner, 428 Mass. 842, 848-849 (1999), quoting Strassheim v. Daily, 221 U.S. 280, 285 (1911), both cases that applied the "effects" doctrine to confer jurisdiction on defendants who "never had set foot in the state." Strassheim, supra. In contrast, in this case the jury had before it what the trial judge described as "a lot" of evidence about the defendant's conduct "done while in Massachusetts," see supra at note 7. "[W]here there is a genuine factual dispute as to whether a crime was committed within Massachusetts, . . . that issue is to be submitted to the

Lowery, 487 Mass. at 868 (defendant's statements in text messages proved he knowingly engaged in sex trafficking).

As for the defendant's claim that the Commonwealth did not prove that he enticed or recruited the victim to engage in commercial sexual activity because she had already worked as a prostitute, it is unavailing. "[N]othing in the language of the human trafficking statute suggests that it excludes conduct aimed at victims who have engaged in prostitution in the past." Commonwealth v. Dabney, 478 Mass. 839, 856, cert. denied, 139 S. Ct. 127 (2018). See Commonwealth v. McGhee, 472 Mass. 405, 427 (2015) (irrelevant whether victim "willing participant" in commercial sexual activity).

The defendant also contends that his buying the victim's plane ticket did not amount to transporting her within the meaning of G. L. c. 265, § 50 (a). The defendant argues that the Legislature intended the word "transports" in § 50 (a) to mean that a defendant must operate the vehicle in which a sex trafficking victim travels. We are not persuaded. Cf.

---

jury in the form of an instruction," and territorial jurisdiction is treated "as if it is an element of the offense." Commonwealth v. Combs, 480 Mass. 55, 61 (2018). The defendant did not, however, request a special jury question on the basis for jurisdiction. In these circumstances, we need not reach the question whether Massachusetts would have had jurisdiction to prosecute the defendant based solely on his conduct while in Nevada. Were we to reach the question, we would conclude the evidence was sufficient.

Commonwealth v. Brown, 481 Mass. 77, 90 (2018) (deriving support from prostitution, G. L. c. 272, § 7, proven by evidence that defendant accompanied prostitute to and from transaction and received proceeds, "[w]hether or not the defendant was driving"). Moreover, the defendant's buying the plane ticket was also proscribed by other verbs in § 50 (a), including "recruits," "entices," "obtains by any means," and "attempts to . . . transport." See Commonwealth v. Gonzalez, 99 Mass. App. Ct. 161, 169 (2021) (defendant enticed and recruited victim by providing her with payment in form of drugs and "assist[ing] the operation in various ways that facilitated its continuation").

Finally, contrary to the defendant's argument, to prove sex trafficking in Massachusetts, the Commonwealth was not required to prove that the victim actually engaged in commercial sexual activity once she arrived in Nevada.[9] See Dabney, 478 Mass. at 855 (deriving support from prostitution, G. L. c. 272, § 7, requires proof of past act of prostitution, but human trafficking, G. L. c. 265, § 50 [a], requires proof of defendant's knowledge of victim's "anticipated engagement in commercial sexual activity" [citation omitted]).

---

[9] There was no evidence before the jury that the victim engaged in commercial sexual activity in Nevada, only her affirmative response to the prosecutor's question if while there she "start[ed] to carry out that plan of making money."

We conclude that the jury heard sufficient evidence that the defendant committed the offense of trafficking for sexual servitude in Massachusetts.

<u>Judgment affirmed</u>.

SMYTH, J. (concurring).  I agree with the majority that the motion judge did not err by denying the defendant's motion to suppress statements.  I also agree that the evidence was sufficient to support the guilty verdict for the single count of human trafficking.  I write separately, however, because I believe the majority too narrowly confines the defendant's sufficiency of the evidence claim to whether "the evidence at trial was insufficient to prove that while in Massachusetts [the defendant] committed conduct prohibited by the sex trafficking statute," ante at   .  The defendant also properly raised the issue whether there was sufficient evidence of the defendant's acts that occurred outside of Massachusetts to prove the defendant committed sex trafficking.

The jury instruction for the single count of human trafficking provided alternative theories, or grounds, of guilt by presenting the jury with the choice as to whether the defendant committed the crime either from within Massachusetts or while out of State.  Because we do not know which theory the jury relied on in reaching their general verdict, we must examine the defendant's claim that there was insufficient evidence of the defendant's conduct from outside of Massachusetts.  See Commonwealth v. Rollins, 470 Mass. 66, 78-79 (2014); Commonwealth v. Plunkett, 422 Mass. 634, 635-636 (1996).

1.  The defendant's out-of-State conduct.  The Commonwealth sought to prove that the defendant enticed, recruited, or obtained the victim to engage in prostitution, first while he was present in Massachusetts, and then later, from outside of Massachusetts.  Regarding the defendant's out-of-State conduct, the Commonwealth presented evidence that the defendant sent text messages pressuring the victim to join him in Nevada,[1] promising to acquire drugs for her to use before meeting with customers,[2] and describing the financial benefits she would receive from their agreement.[3]  The defendant also booked and paid the victim's airfare from Massachusetts to Nevada.

2.  The defendant's challenge to the sufficiency of the evidence.  The majority concludes that the issue raised by the defendant on appeal is limited to whether the jury heard sufficient evidence to prove that the defendant committed human trafficking while in Massachusetts.  See ante at    .  I

---

[1] For example, the defendant sent the following text messages to the victim:  "U packed ya shit"; "Wtf r u doing"; "Get ya shot packed and go to mii mii [driver to the bus station] now"; "Bitch get up"; and "Get tf up."

[2] Before leaving for Nevada, the victim advised the defendant, "I have to be high to do this shit [exchange sex for money.]  u do know that right?"

[3] The evidence showed these out-of-State acts occurred from February 23 through February 25, 2018.

disagree, as the defendant also claims that the effects doctrine[4] did not confer jurisdiction to Massachusetts because the Commonwealth failed to prove that the defendant, while he was beyond the borders of Massachusetts, either committed predicate acts of human trafficking or intended to act in a manner detrimental to Massachusetts.  He therefore properly raised this issue, see Mass. R. A. P. 16 (a) (9) (A), as appearing in 481 Mass. 1628 (2019), and I believe it is our obligation to address it.  See Commonwealth v. Angiulo, 415 Mass. 502, 523 n.17 (1993).

Moreover, the Commonwealth does not claim that the defendant has not properly raised the issue of whether his out-of-State conduct conferred jurisdiction to Massachusetts.  To the contrary, the Commonwealth's brief addresses the question whether "there was insufficient evidence of his guilt because the Commonwealth did not prove beyond a reasonable doubt that Massachusetts had jurisdiction over the case."  In fact, the Commonwealth does not go so far as the majority in concluding that the defendant's acts within Massachusetts were sufficient to support the conviction.  See ante at    ,   .  Instead, the Commonwealth argues that Massachusetts had jurisdiction over the

---

[4] The effects doctrine, as discussed infra, "has been described in terms of 'constructive presence' within a State although the defendant was not physically present."  Vasquez, petitioner, 428 Mass. 842, 848 n.4 (1999).

defendant's conduct only after the victim, while in Massachusetts, received the plane ticket to travel to Nevada; the undisputed evidence shows the defendant was out of State when he provided the ticket to the victim.

The defendant did not forfeit his right to challenge the sufficiency of the evidence of out-of-State jurisdiction by not requesting a special verdict. See ante at note 8. Indeed, the judge instructed the jury on both theories of liability,[5] see Commonwealth v. Combs, 480 Mass. 55, 61 (2018) ("where there is a genuine factual dispute as to whether a crime was committed within Massachusetts, as here, that issue is to be submitted to the jury in the form of an instruction"), and the burden was not on the defendant to request a special verdict, cf. Commonwealth v. Manzelli, 68 Mass. App. Ct. 691, 695 n.8 (2007) ("Where, as here, multiple theories of criminal liability are presented to a jury, the Commonwealth would be well advised to request a special verdict indicating the precise basis for any conviction to avoid potentially needless reversals").

---

[5] The trial judge placed the issue of jurisdiction to the jury as a matter of fact to be proved beyond a reasonable doubt by instructing them, in pertinent part:

> "Now I want to talk about jurisdiction. For this charge, the Commonwealth must also prove that the crime of human trafficking as I defined it above occurred in Massachusetts or that, if done outside of Massachusetts, was done with the intention of producing detrimental effects in and within the Commonwealth of Massachusetts."

Furthermore, the defendant's right to challenge the sufficiency of the evidence supporting jurisdiction is not limited to appealing from the denial of his pretrial motion to dismiss.[6]  See ante at note 5.  The prosecutor's reference to venue under G. L. c. 277, § 57A, does not diminish the Commonwealth's burden of proving jurisdiction beyond a reasonable doubt.  See Commonwealth v. DiMarzo, 364 Mass. 669, 671-672 (1974).

Finally, even if the defendant had not properly raised the insufficiency of out-of-State jurisdiction as an alternative theory of proof on appeal, it is my view that we should exercise our discretion to decide such a fundamental issue in this case. See Commonwealth v. Elder, 389 Mass. 743, 746 (1983).

3.  Discussion.  This concurrence relies on two common-law rules that require a showing of sufficiency for each alterative ground or theory of proof presented to a jury in a single charge.  First, the Supreme Judicial Court has instructed that "if the evidence presented to the jury would warrant a conviction on one ground, but not on another, and it is impossible to tell on which ground the jury relied, the verdict must be set aside on appeal" (emphasis added).  Rollins, 470

---

[6] The motion judge denied the defendant's pretrial motion to dismiss for lack of jurisdiction after concluding that whether the defendant's out-of-State conduct "falls within the 'effects' doctrine exception" was an issue for the fact finder at trial.

Mass. at 78, quoting Chambers v. Commonwealth, 421 Mass. 49, 51-52 (1995).  This rule applies when the grounds for conviction presented in a single charge may be sufficiently distinct from each other to constitute different factual bases, and either ground serves as an independent basis for the conviction.  Rollins, supra at 78-79.

For example, in Commonwealth v. Fragata, 480 Mass. 121, 128-129 (2018), the court determined that evidence of the defendant's actions of (1) preventing the victim from calling 911, and (2) preventing the victim from leaving her apartment, constituted alternative grounds to establish the first two elements of witness intimidation.  The court reversed after concluding that evidence pertaining to only one of the grounds was sufficient to establish the elements and to sustain the verdict, and the court had no way of knowing on which ground the jury relied.  See id. at 129.  See also Rollins, 470 Mass. at 78-79 (court vacated defendant's conviction on single count of possession of child pornography where impossible to discern which of two photographs submitted -- only one of which met statutory definition of pornography -- was premise for jury's guilty verdict); Commonwealth v. Johnson, 45 Mass. App. Ct. 473, 477-478 (1998).

Similarly, when there are alternative theories of guilt alleged in a single charge, it is "our established rule that

there must be evidence to support each alternative theory submitted to the jury to uphold a general verdict of guilty." Plunkett, 422 Mass. at 639. "[T]his rule does not apply in every situation where there is more than one way to prove an element of the crime," but it is instead reserved for circumstances when "distinct 'theories of guilt . . .' [constitute] 'alternative means by which to commit the crime'" (citations omitted). Commonwealth v. Inoa, 97 Mass. App. Ct. 262, 263 (2020).[7]

This court's decision in Inoa, 97 Mass. App. Ct. at 264, illustrates this distinction. In Inoa, the court held that the alternative definitions of "serious bodily injury" did not establish distinct theories of guilt to support a conviction of

---

[7] The following cases provide examples where the court has concluded that the evidence as presented in a single charge to a jury constituted distinct or alternative theories of guilt: Plunkett, 422 Mass. at 635 (deliberate premeditation and felony-murder constitute alternative theories of murder); Manzelli, 68 Mass. App. Ct. at 695 n.8 (interception of oral communication and attempted interception of oral communication present alternate theories of criminal liability under G. L. c. 272, § 99); Commonwealth v. Rodriguez, 67 Mass. App. Ct. 636, 648 (2006), S.C., 450 Mass. 302 (2007) (possession with intent to distribute, and "bringing into" Commonwealth constitute alternate theories of cocaine trafficking); Commonwealth v. Zuluaga, 43 Mass. App. Ct. 629, 641 (1997) (constructive possession and actual possession constitute alternative theories of drug trafficking). In these cases, the court held that the alternate theories presented to the jury were "'separate, distinct, and essentially unrelated ways in which the same crime can be committed,' requiring on appeal that the evidence as to each theory be assessed separately" (citation omitted). Inoa, 97 Mass. App. Ct. at 264.

assault and battery by means of a dangerous weapon causing serious bodily injury (G. L. c. 265, § 15A), but instead provided "related ways of proving that element" of the offense. Id. at 265.  See, e.g., Commonwealth v. Smith, 458 Mass. 1012, 1013 (2010) (alternative scienter clauses within second element of armed home invasion charge not alternative theories of proof); Commonwealth v. Oquendo, 83 Mass. App. Ct. 190, 193-194 (2013) (force and threat of bodily injury alternative ways to prove element that defendant compelled rape victim to submit, and not separate theories of guilt).

a.  The jury instruction.  The judge, during his final charge concerning the single human trafficking count, instructed the jury, in pertinent part, as follows:

> "Therefore, after considering all of the evidence, you determine that the Commonwealth has proved beyond a reasonable doubt that . . . the Defendant knowingly subjected, recruited, enticed, harbored, transported, provided, or obtained any means another person, specifically [named victim], to engage in commercial sexual activity . . . and that that crime of human trafficking occurred in Massachusetts or that, if it was done outside of Massachusetts, was done with the intention of producing detrimental effects in and within the Commonwealth of

Massachusetts, then you shall find the Defendant guilty of this offense"[8],[9] (emphasis added).

Although evidence of the defendant's conduct in this case may be characterized as having constituted a continuous course of conduct that began in Massachusetts and continued outside of Massachusetts, by instructing the jury in the disjunctive "or" on the issue whether the crime of human trafficking occurred

---

[8] The full instructions on jurisdiction were as follows:

"Now I want to talk about jurisdiction. For this charge, the Commonwealth must also prove that the crime of human trafficking as I defined it above occurred in Massachusetts or that, if done outside of Massachusetts, was done with the intention of producing detrimental effects in and within the Commonwealth of Massachusetts.

"Therefore, after considering all of the evidence, you determine that the Commonwealth has proved beyond a reasonable doubt that each of the two elements I just defined -- that is that the Defendant knowingly subjected, recruited, enticed, harbored, transported, provided, or obtained any means another person, specifically [named victim], to engage in commercial sexual activity, or that the Defendant benefited financially or by receiving anything of value as a result of said activity and that that crime of human trafficking occurred in Massachusetts or that, if it was done outside of Massachusetts, was done with the intention of producing detrimental effects in and within the Commonwealth of Massachusetts, then you shall find the Defendant guilty of this offense. If, however, after your consideration of all the evidence, you find that the Commonwealth has failed to prove that the crime of human trafficking occurred in Massachusetts or that, if done outside of Massachusetts, was done with the intention of producing detrimental effects in and within the Commonwealth of Massachusetts, then you shall find the Defendant not guilty."

[9] The defendant does not challenge the propriety of the jury instruction on appeal.

either inside Massachusetts <u>or</u> outside of Massachusetts with detrimental intentions, the judge effectively directed the jury to instead consider alternate bases by which the defendant may have committed the crime of human trafficking.  We presume the jurors followed the judge's instruction.  See, e.g., <u>Commonwealth</u> v. <u>Bryant</u>, 482 Mass. 731, 737 (2019).  As a result, we are unable to discern whether the jury based their general verdict on the defendant's course of conduct from either within or outside of Massachusetts.[10]

The instruction's jurisdictional divide is significant because the evidence of the defendant's discrete predicate acts of enticement, recruitment, transportation, and attempt to obtain the victim for commercial sexual activity that lie on either side of the instruction's disjunctive "or" vary in the dates of occurrence,[11] manner of conduct, and territorial jurisdiction.  For instance, the jury may have based their guilty verdict on evidence that the defendant enticed the victim

_____

[10] The defendant does not challenge on appeal whether the possibility that the jury convicted him based on his conduct outside of Massachusetts presents a "substantial risk that the defendant was convicted of a crime for which he was not indicted by a grand jury," in violation of art. 12 of the Massachusetts Declaration of Rights, given that the indictment against him alleged he committed the crime in Massachusetts.  See <u>Commonwealth</u> v. <u>Barbosa</u>, 421 Mass. 547, 554 (1995).

[11] The undisputed evidence could lead a reasonable juror to conclude that the defendant was in Massachusetts from February 19, 2018, until he flew to Las Vegas on February 23, 2018.

by paying for her airfare and pressuring her to join him in Nevada.  These acts are sufficiently distinct from those the defendant committed in Massachusetts to constitute alternative grounds of proof.  See Fragata, 480 Mass. at 128-129; Rollins, 470 Mass. at 78-79.

Furthermore, the instruction does not present the jury with merely different ways of proving the first element's actus reus, for example, recruitment, enticement, or transportation, consistent with the principle as illustrated above in Inoa, 97 Mass. App. Ct. at 264, and cases cited therein.  Instead, the instruction provides a choice as to how, when, and from where the defendant committed the crime.  Thus, the jurisdictional distinction provides for sufficiently separate and distinct means to commit the crime, and it triggers the inevitable question whether the jury based their verdict on the evidence of the defendant's conduct inside or outside of Massachusetts. While it is unnecessary to answer that question here, there must be sufficient evidentiary support for this alternative means of guilt.  See, e.g., Plunkett, 422 Mass. at 635; Commonwealth v. Rodriguez, 67 Mass. App. Ct. 636, 649-650 (2006), S.C., 450 Mass. 302 (2007).

The discrete nature of the jurisdictional theories of proof is further illustrated by the judge's instruction to the jury that they were required to acquit the defendant if the

Commonwealth failed to prove the defendant committed the crime of human trafficking either from within or outside of Massachusetts.[12]  This essentially required the jury to decide the sufficiency of the evidence as to both jurisdictional options; otherwise, they were required to acquit.  Although I recognize that the use of the word "or" in both of the jurisdictional instruction's sentences (concerning the jury's "consideration of all the evidence"), see note 8, supra, may be internally inconsistent, viewing these sentences in the context of the entire instruction, I conclude that the evidence must be sufficient for each jurisdictional option for the conviction to stand.

My view does not represent an analytical departure from the premise that the Commonwealth may proceed on a theory that evidence of a continuous course of conduct suffices to establish each essential element, as long as the jury instruction is consistent with that theory.  The court's decision in Commonwealth v. Fan, 490 Mass. 433, 450-451 (2022), is

---

[12] The judge concluded his instructions on jurisdiction as follows:

"If, however, after your consideration of all the evidence, you find that the Commonwealth has failed to prove that the crime of human trafficking occurred in Massachusetts or that, if done outside of Massachusetts, was done with the intention of producing detrimental effects in and within the Commonwealth of Massachusetts, then you shall find the Defendant not guilty."

instructive to this point.  In Fan, the Commonwealth alleged

that the defendant, who operated five brothels located in three

different counties, engaged in a continuous course of conduct to

ultimately prove the defendant committed five counts of human

trafficking.  See id.  The trial judge denied the defendant's

request to instruct the jury they "must be unanimous as to at

least one human person."  Id. at 445.  Instead, the judge

instructed the jury, in pertinent part, as follows:

> "In order to prove any one of these defendants guilty of
> [human trafficking], the Commonwealth must prove
> essentially two elements beyond a reasonable doubt. . . .
> That is, the Commonwealth satisfies this first element if
> it proves beyond a reasonable doubt that the defendant:  A)
> subjected, recruited, enticed, harbored, transported,
> provided, or obtained by any means a person or persons to
> engage in commercial sexual activity at the particular
> location identified in the verdict slip . . . ." (emphasis
> added).

Id. at 453 n.14.

In concluding that specific unanimity[13] was not required as

to a specific victim and act, the court reasoned that where the

jury are instructed to consider whether a continuing course of

conduct satisfied the elements of a crime, unanimity on the

issue whether a specific event occurred is not required because

when the "jury are not offered a choice between discrete

incidents . . . to support a single charge, the risk of a lack

---

[13] The court's unanimity analysis in Fan, 490 Mass. at 450-451, is relevant to the present case considering that a jury's sufficiency determination is a precondition to unanimity.

of unanimity . . . does not exist" (citation omitted).  Id. at 451.  Notably, in Fan, the Commonwealth charged the defendant with a single count of human trafficking as to each brothel, and the corresponding jury instructions specified the brothel location as identified on the verdict slip.  See id. at 451, 453 n.14.  In contrast, the instruction in the present case offered the jury a choice of discrete courses of conduct in two separate jurisdictions on which to base their verdict.

Moreover, the Commonwealth's reliance on the defendant's specific conduct aimed at the victim in the instant case stands in contrast to the prosecution in Fan and increases the likelihood the jury would differentiate between jurisdictions in reaching a verdict.  See id. at 451-452 ("the evidence was presented largely in generalities concerning all of the victims; there was scant evidence of particular actions against specific victims").

This court's decision in Commonwealth v. Pimental, 54 Mass. App. Ct. 325, 327-328 (2002), offers another example of the significance of the judge's instruction in determining whether evidence of a continuous course of conduct presented the jury with alternative theories of guilt.  In Pimental, the defendant challenged the sufficiency of his conviction on a single-count indictment charging larceny of "one or more firearms" in violation of G. L. c. 266, § 30.  Id. at 328.  We rejected the

defendant's argument, premised on the rule in Plunkett, 422 Mass. at 638, that each of the allegedly stolen guns constituted a separate and distinct theory of guilt, and we concluded that "the indictment, the Commonwealth's proof, and the judge's instructions plainly presented a single theory of culpability, directed to a single larcenous plan, involving multiple stolen items." Pimental, supra. We emphasized that

> "[t]he judge charged the jury that the Commonwealth was required to prove that the defendant had 'acted out of a single scheme, a continuing intent to steal. That even though time elapsed between the incidents, they were not separately motivated, but were part of a general scheme or a plan to steal.'"

Id. at 327-328. Thus, the jury charge in Pimental provided no choice of alternative courses of conduct, in contrast to the instruction here.

b. The effects doctrine. "It is elementary that it must be shown that jurisdiction lodged in the courts of Massachusetts before the defendant can be found guilty of the offence charged." Combs, 480 Mass. at 60, quoting Commonwealth v. Fleming, 360 Mass. 404, 406 (1971). In determining whether the evidence is sufficient to support a conviction, the defendant's exact whereabouts are not controlling because Massachusetts "is not deprived of jurisdiction over every criminal case in which the defendant was not physically present within the State's borders when the crime was committed." Vasquez, petitioner, 428

Mass. 842, 848 (1999).  Under the effects doctrine articulated by Justice Holmes over a century ago, "[a]cts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a State in punishing the cause of the harm as if he had been present at the effect."[14]  Id. at 848-849, quoting Strassheim v. Daily, 221 U.S. 280, 285 (1911).

The Commonwealth may establish that a defendant, who commits the elements of a crime from outside the confines of Massachusetts, produced a detrimental effect within Massachusetts by proving that the defendant's actions victimized an individual who resided in Massachusetts at a time when the victim was physically present within Massachusetts.  See Vasquez, petitioner, 428 Mass. at 849 (jurisdiction proper "although the offending parent was outside the State at the time he committed the crime [criminal nonsupport], the detrimental effect occurred where the child[ren] resided"); Commonwealth v. Thompson, 89 Mass. App. Ct. 456, 470-471 (2016) (Massachusetts jurisdiction proper where defendant, acting from within New Hampshire, victimized individuals who resided in Massachusetts in credit card fraud).

---

[14] It is unclear from the record why the defendant requested the judge to instruct the jury that they were required to find that the offense was committed with the intention of producing detrimental effect, see note 8, supra; see also ante at note 8, but did not request the judge to instruct that the defendant's conduct produced a detrimental effect in Massachusetts.

"Where territorial jurisdiction is a triable issue, the Commonwealth's burden of proof is the same as it is for the substantive elements of the crime(s) charged, that being proof beyond a reasonable doubt." Combs, 480 Mass. at 61.

c. Sufficiency of the defendant's conduct from outside of Massachusetts. In reviewing the sufficiency of the evidence, the "question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (citation omitted). Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).

A rational jury could have found that the defendant, while he was in Nevada, recruited, enticed, and attempted to obtain the victim to engage in prostitution by sending the numerous text messages, see notes 1 and 2, supra, as well by providing her transportation from Massachusetts by paying for her airfare and booking her ticket. Consequently, the jury could have reasonably concluded that the defendant, by intentionally victimizing an individual who resided in Massachusetts, intended to produce and actually produced a detrimental effect within Massachusetts. See Vasquez, petitioner, 428 Mass. at 849; Thompson, 89 Mass. App. Ct. at 470-471. While the detrimental effect in the instant case is not as easily quantified as in cases involving credit card fraud (Thompson, supra) or obtaining

money by false pretenses (Strassheim, 221 U.S. at 285), I am confident that the evidence was sufficient to establish that the victim, recently released from jail and battling a drug addiction, suffered harm by being exposed (and, moreover, ultimately yielding) to the defendant's enticement and pressure to resume prostitution.

Furthermore, this harm to the victim detrimentally affected the Commonwealth given its authority[15] and interest in protecting its residents from being subjected to human trafficking.  See Thompson, 89 Mass. App. Ct. at 470.  See also G. L. c. 265, § 50 (a).  Accordingly, I am satisfied that the evidence of the defendant's out-of-State conduct rests properly within Massachusetts jurisdiction pursuant to the effects doctrine.

In determining that the application of the effects doctrine confers jurisdiction over the defendant, I am mindful that in enacting the sex trafficking statute "the Legislature recognized that the Commonwealth could not simply rely on Federal prosecutions to combat human trafficking, and needed to empower local authorities" to pursue cases that evaded Federal review. Commonwealth v. Dabney, 478 Mass. 839, 852-853 (2018).

---

[15] "Under its broad police powers, Massachusetts has power to enact rules to regulate conduct, to the extent that such laws are necessary to secure the health, safety, good order, comfort, or general welfare of the community" (quotation and citation omitted).  Thompson, 89 Mass. App. Ct. at 468.

Moreover, "[t]he clear and deliberate focus of the statute is the intent of the perpetrator, not the means used by the perpetrator to accomplish [their] intent." Commonwealth v. McGhee, 472 Mass. 405, 415 (2015). It therefore would be absurd, in our increasingly technology-driven world, to allow the defendant to evade prosecution in Massachusetts simply because he recruited and enticed the victim from another State while she remained in Massachusetts. See Thompson, 89 Mass. App. Ct. at 472 ("The kind of jurisdictional issue we confront in this case is likely to appear with increasing frequency as criminals exploit our digital and virtual interconnectedness to prey on victims at a geographic remove"). Similarly, given the jurisdictional challenges associated with human trafficking offenses, see, e.g., Fan, 490 Mass. at 449 n.12 ("victims of human trafficking often may be homeless or otherwise transient, and frequently may be foreign nationals"), it is inconsistent with our effects law jurisprudence to suggest the Commonwealth is prohibited from relying on the doctrine to prove an offense if the evidence shows the defendant also committed predicate acts within Massachusetts.

Thus, I conclude that the defendant's conduct from outside of Massachusetts was sufficient to sustain the jury's verdict.